**Brian R. SILLICK, Petitioner,**

v.

**John F. AULT, Warden, Respondent.**

**No. C02–185–LRR.**

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Feb. 25, 2005.

Brian Robert Sillick, Anamosa, IA, pro se.

Jon M. Kinnamon, Kinnamon–Kinnamon–Russo–Meyer, Cedar Rapids, IA, for Plaintiff.

Thomas W. Andrews, Department of Justice, Des Moines, IA, for Defendants.

**ORDER**

READE, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ................................................741

II. PROCEDURAL BACKGROUND .........................................741
 A. Trial ...................................................741
 B. Direct Appeal ...........................................742
 C. State Post–Conviction Relief Proceedings .................745
 D. Federal Post–Conviction Relief Proceedings...............749

III. STANDARD OF REVIEW ...........................................754

IV. 28 U.S.C. § 2254 MOTION ......................................754
 A. Applicable Standard .....................................754
 B. Analysis of Properly Exhausted Claims ....................754
 1. Ineffective Assistance of Counsel Standard ..........756
 2. Combined Defense Instruction and Marshaling Instruction Errors .......757
 a. Combined Defense Instruction .................758
 b. Marshaling Instruction Errors ................760
 3. Definitions of Specific Intent Elements .............762
 C. Procedurally Defaulted Claim ............................765

V. CONCLUSION....................................................766

### I. INTRODUCTION

The matter before the court is Petitioner Brian R. Sillick's ("Sillick") Objections (docket no. 19) to Chief Magistrate Judge John A. Jarvey's Report and Recommendation (docket no. 18) in which he recommends denying Sillick's action filed pursuant to 28 U.S.C. § 2254 (docket no. 1).

### II. PROCEDURAL BACKGROUND

Sillick does not dispute Chief Magistrate Judge Jarvey's summary of the relevant procedural background surrounding this case. For convenience, the court will restate this case's procedural background.

### A. Trial

On June 13, 1994, Sillick was charged with first-degree murder, in violation of Iowa Code §§ 707.1, 707.2 and 902.7, for killing his girlfriend, Tammi Wilson ("Wilson"), on May 2, 1994. Sillick's jury trial commenced January 30, 1995.[1] The evidence presented at trial was that on the morning of May 2, 1994, eight-year old Lindsey Wilson ("Lindsey") awoke to the sound of her mother, Wilson, arguing with Sillick. Wilson got a donut for Lindsey. As she sat and ate her donut, Lindsey listened to Sillick and Wilson. Sillick yelled at Wilson and Wilson cried. Lindsey watched as Sillick went into a bedroom, returned with a sawed-off shotgun, and shot Wilson. Lindsey testified that, before Sillick shot her mother, she heard Wilson say, "Don't do this in front of my kids." Sillick shot Wilson three times with the sawed-off shotgun. Police later discovered a fourth hole from the shotgun blast in the carpeting on the hallway floor just

---

1. Attorneys David Grinde and Quint Meyerdirk represented Sillick at trial.

above Wilson's head. Lindsey watched as Sillick, still holding the shotgun, retrieved his keys from the television room and "drove off." Sillick drove to the Cedar Rapids Police Station, approached several officers standing outside of the building, stuck out his hands, dropped his keys on the pavement, and announced, "I just shot somebody. I want to give myself up."

The case was defended on the theory that Sillick, due to his extensive use of cocaine and consumption of alcohol, did not have the requisite intent to kill Wilson in order to be convicted of first-degree murder. Sillick asserted through evidence and testimony, not his own, that he had a history of depression and drug and alcohol abuse, had sought treatment for drug and alcohol abuse, had been using cocaine for several days prior to shooting Wilson and had been drinking beer on the morning of the crime. A defense expert testified that, during an interview with Sillick concerning the time prior to shooting Wilson, Sillick relayed that he had not slept for four days, had been hearing voices and had hallucinated through the morning of the shooting and had experienced paranoia and panic. According to expert testimony regarding an interview with Sillick, Sillick did not remember actually shooting Wilson but recalled stepping over her body and "beginning to hunt for his car keys." A defense expert testified that Sillick met the criteria for "cocaine psychosis" at the time of the shooting. On February 9, 1995, the jury returned a unanimous verdict of guilty of first-degree murder. On March 10, 1995, the Iowa District Court for Linn County sentenced Sillick to life imprisonment. *See State v. Sillick*, FECR002422 (Iowa Dist. Ct. for Linn County 1995).

### B. Direct Appeal

On March 30, 1995, Sillick filed his notice of appeal to the Iowa Supreme Court.[2]

On direct appeal, Sillick raised the following issues: (1) whether the district court abused its discretion in excluding impeachment evidence concerning the State's expert's opinion that Sillick is guilty of only second degree murder; (2) whether Sillick was denied his right to the effective assistance of counsel for failing to object to a jury instruction which combined and confused the concepts of intoxication and diminished responsibility such that the jury was not sufficiently instructed on either principle; and (3) whether the State proved beyond a reasonable doubt that Sillick committed first degree murder.

First, Sillick argued the trial court abused its discretion in excluding a portion of the written report prepared by the State's expert witness, Dr. Frederickson, which Sillick wished to use at trial to impeach Dr. Frederickson's credibility. Dr. Frederickson wrote in his report, "I would note that most inmates who commit crimes like his are doing time for second degree murder." Ct. Ex. 3. Prior to trial, the State filed a motion in limine asking the court to exclude from evidence only that sentence from Dr. Frederickson's report. Sillick resisted the motion in limine and, prior to trial, the trial court excluded the evidence as unduly prejudicial to the State. At trial, Dr. Frederickson testified Sillick was not psychotic at the time of the shooting. He also mentioned two of his psychotic patients and the verdicts in their trials. Sillick's attorneys made no objection to Dr. Frederickson's testimony about his psychotic patients on the basis they could not cross-examine Dr. Frederickson about such statement as a result of the court's ruling on the State's motion in limine. Sillick's trial counsel cross-examined Dr. Frederickson but did not question Dr. Frederickson regarding the statement the trial court excluded from evidence.

**2.** Attorney Sharon Stevens represented Sillick on direct appeal.

Sillick's attorneys did not make an offer of proof during the trial regarding the sentence excluded from Dr. Frederickson's report pursuant to the court's ruling on the State's motion in limine.

Second, Sillick claimed he received ineffective assistance of counsel when his trial counsel failed to object to Jury Instruction 20, which was a combined instruction regarding diminished responsibility and intoxication. Jury Instruction 20 reads:

## INSTRUCTION NO. 20

"Diminished responsibility" means a mental condition which does not allow the person to form a specific intent. Concerning element number 4 of Instruction No. 15, it means a mental condition which does not allow the person to form a premeditated, deliberate, specific intent to kill.

"Diminished responsibility" does not entirely relieve a person of the responsibility for his actions and is not the same as an insanity defense.

The Defendant claims he was under the influence of drugs at the time of the alleged crime. The fact that a person is under the influence of drugs does not excuse nor aggravate his guilt.

Even if a person is under the influence of a drug, he is responsible for his act if he had sufficient mental capacity to form the specific intent necessary to the crime charged or had the specific intent before he fell under the influence of the drug and then committed the act. Intoxication is a defense only when it causes a mental disability which makes the person incapable of forming the specific intent.

Neither "diminished responsibility" nor "intoxication" can reduce Second Degree Murder to Manslaughter.

The Defendant does not have to prove "diminished responsibility" or "intoxication"; rather, the burden is on the State to prove the Defendant was able to, and did, form the specific intent required.

*State v. Sillick,* No. 6–569/95–0578 (Iowa Ct.App.1997), Appellant's Appx. at 617–18. Prior to instructing the jury, the trial court asked the attorneys whether either side had any objections to the instructions. The State objected to Jury Instruction 20 on the basis the State did not believe a defendant is entitled to use both defenses. Furthermore, the State believed the evidence supported the intoxication defense and there was insufficient evidence to support a diminished responsibility defense. However, if the court intended to instruct the jury as to both defenses, while the State's attorney would not necessarily have chosen to combine the two defenses in one instruction, the State found no particular language objectionable. Sillick's trial counsel stated he had no exceptions or objections to any of the court's instructions. Regarding Jury Instruction 20, Sillick's attorney stated he believed there was sufficient evidence presented to give both instructions.

In his appellate brief, Sillick stated,

It is apparent that the district court prepared this instruction by combining part of the Uniform diminished responsibility instruction with the entire Uniform Instruction on intoxication. *See* Uniform Instructions 200.12 and 200.14.

Nonetheless, in creating Instruction 20, the district court deleted the last two paragraphs of the Uniform Instruction on diminished responsibility. The deleted portions of the instruction provide:

You should determine from the evidence if the defendant was capable of premeditating, deliberation, and forming a specific intent to kill.

If you have a reasonable doubt the defendant was capable of acting deliberately, with premeditation, and the

specific intent to kill, then the defendant cannot be guilty of First Degree Murder. You should then consider the lesser included charges.

Uniform Instruction 200.12. These deleted portions of the instruction were crucial to the diminished responsibility defense because they explain how to apply the law in relation to the defense. The entire Uniform Instruction makes clear that a defendant's *mental condition* may render him incapable of premeditating, deliberating or forming specific intent. The instruction further explains that a defendant cannot be convicted of First Degree Murder if reasonable doubt exists as to premeditation, deliberation or the specific intent to kill. *See* Uniform Instruction 200.12. The instruction given in this case fails to make these issues clear.

*State v. Sillick,* No. 6–569/95–0578, Appellant's Br. at 14–15.

Sillick also argued he received ineffective assistance of counsel because his attorney failed to seek admission of the excluded statement from Dr. Frederickson's report during Dr. Frederickson's cross-examination after he testified on direct examination regarding his other psychotic patients' cases. Sillick maintained that had his attorney raised the issue before the district court after Dr. Frederickson's direct examination testimony, the excluded evidence from the report would have been admissible, and the failure to move to admit such evidence was obviously prejudicial to Sillick because it bore upon the crux of his case.

Finally, Sillick argued the State failed to prove beyond a reasonable doubt that he had the requisite mental state to commit first-degree murder so the trial court erred in failing to grant his motion for judgment of acquittal.

On February 26, 1997, the Iowa Court of Appeals rejected Sillick's claims, including his ineffective assistance of counsel claims, and affirmed Sillick's conviction. *State v. Sillick,* No. 6–569/95–0578. Specifically, the Iowa Court of Appeals ruled that with regard to Sillick's argument the trial court abused its discretion in excluding a portion of Dr. Frederickson's report which Sillick wished to offer to impeach Dr. Frederickson, Sillick did not preserve the error for appeal because, following the trial court's Order granting the State's motion in limine excluding such evidence, Sillick did not object or otherwise raise the issue during trial. *Id.* at 5. With regard to Sillick's ineffective assistance of counsel claim, the Iowa Court of Appeals rejected Sillick's claim that he received ineffective assistance of counsel when his attorney failed to object to the combined theory of defense instruction because the Iowa Court of Appeals found no error in the combined instruction, so Sillick's attorney had no duty to object to the instruction. *Id.* The Iowa Court of Appeals also rejected Sillick's claim he received ineffective assistance of counsel when his attorney failed to impeach the State's expert witness because the impeachment claim was weak and even if it should have been pursued, the court could not conclude the outcome of the trial would have been different. *Id.* at 5–6. Regarding Sillick's claim that there was not substantial evidence to support the premeditation, deliberation or intent to kill elements of first-degree murder, the Iowa Court of Appeals rejected such claim and found substantial evidence existed to support the verdict. *Id.* at 6.

On July 23, 1997, the Iowa Supreme Court reviewed Sillick's appeal; that is, it considered the same four challenges to Sillick's conviction which were presented to the Iowa Court of Appeals. The Iowa Supreme Court ruled as follows: (1) the trial court did not abuse its discretion in excluding the statement from Dr. Freder-

ickson's written report and, thus, not allowing Sillick to impeach Dr. Frederickson with the excluded statement, because any relevancy the evidence possessed was outweighed by its possible prejudice to the State; (2) error was not preserved on Sillick's challenge to Jury Instruction 20, so any objection other than ineffective assistance of counsel was waived, but Sillick was free to raise ineffective assistance on this issue during post-conviction relief proceedings; (3) Sillick's ineffectiveness claim regarding the failure to impeach Dr. Frederickson with the excluded statement from his report was moot because of its ruling that the trial court did not abuse its discretion in excluding such statement; and (4) a rational trier of fact could have found Sillick had the requisite intent to kill and, thus, the evidence was sufficient to support the first-degree murder conviction. *See State v. Sillick*, No. 162/95–578 (Iowa 1997). Based on its review, the Iowa Supreme Court vacated the decision of the Iowa Court of Appeals and affirmed the judgment of the Iowa District Court for Linn County. *Id.* at 5. Procedendo issued September 12, 1997.[3]

### C. State Post–Conviction Relief Proceedings

On June 16, 1998, Sillick challenged his conviction and resulting sentence by filing an application for post-conviction relief in the Iowa District Court for Linn County.[4] In his application for post-conviction relief, Sillick claimed his trial and appellate counsel were ineffective in the following ways:

(1) Failure to object to critical jury instructions improperly combining two separate defenses [which violated Sillick's right to due process][5].

(2) Failure to object to jury instructions that omitted language from the essential elements of first-degree murder [which thereby violated due process and equal protection of the law][6].

(3) Failure to have the first-degree murder marshaling instruction include a jury finding for each defense interposed [in violation of due process], thereby compelling the jury to consider and determine mental capacity prior to entering a first-degree murder verdict.

(4) Failure to object to the Trial Information that failed to allege the essential elements for first-degree murder.

(5) Failure to object to preserve error on the prosecutor's improper closing remarks.

(6) Failure to object to [S]tate's questions to its expert as to Defendant's mental capacity for malice and malice aforethought which were not an issue of the case.

(7) Failure to object to verdict form required by law in cases where the defense of diminished responsibility is asserted.

(8) Failure to attempt to reverse the trial court's pre-trial ruling sustain-

3. Iowa civil and criminal court records are available online at the following website: http://www.iowacourts.state.ia.us. The only record of procedendo being issued in this case is available online.

4. Attorney Jon Kinnamon has represented Sillick throughout his state and federal post-conviction relief proceedings.

5. Sillick added this due process argument regarding claims (1) and (3) in his Amendment to PCR Petition. *See Sillick v. State*, No. 01–284, Appellant's Appx. at 16.

6. Sillick added this due process and equal protection argument in his Second Amendment to Postconviction Relief Application. *See Sillick v. State*, No. 01–284, Appellant's Appx. at 26.

ing the State's Motion in Limine concerning a portion of the [S]tate's expert deposition.

*Sillick v. State*, LACV033083, 2 (Iowa Dist. Ct. for Linn County 2000). Because Sillick's post-conviction relief claims were related, the Iowa District Court for Linn County addressed all of them in the context of ineffective assistance of counsel. On November 21, 2000, the Iowa District Court for Linn County concluded, with respect to all eight claims, trial and appellate counsel acted well within the range of normal competency required of a defense attorney; the court denied Sillick's application for post-conviction relief. *Id.* at 4.

On November 30, 2000, Sillick filed an application for enlarged or amended findings pursuant to Iowa Rule of Civil Procedure 1.904(2). On February 7, 2001, the Iowa District Court for Linn County denied, for the most part, Sillick's application for enlarged or amended findings. The Iowa District Court for Linn County amended its findings to reflect the fact the Iowa Supreme Court preserved for post-conviction review the following claims grounded in ineffective assistance of counsel: (1) trial counsel's failure to object to an instruction; and (2) combining the concepts of intoxication and diminished responsibility, which was allegedly erroneous for its failure to adequately explain the defense of diminished responsibility.

On February 12, 2001, Sillick filed a notice of appeal. On appeal, Sillick argued he received ineffective assistance of counsel from his trial counsel for the same eight reasons raised before the Iowa District Court for Linn County in the post-conviction relief proceeding and he received ineffective assistance of counsel from his appellate counsel because she failed to preserve the trial error on direct appeal. Sillick divided his arguments into two issues: (1) ineffective assistance regarding the jury instructions; and (2) ineffective assistance regarding other trial-related issues.

With regard to the first issue, i.e., whether he received ineffective assistance of trial counsel regarding the jury instructions, Sillick argued Jury Instruction 20, which combined the concepts of intoxication and diminished responsibility, was erroneous for its failure to adequately explain both defenses. Because his appellate attorney raised the issue on direct appeal and preserved error, Sillick urged this ineffectiveness claim only against trial counsel. Sillick argued trial counsel was ineffective for failing to object to the combined instruction and to request separate instructions on intoxication and diminished responsibility. Sillick further averred the combined instruction fails to instruct the jury that the evidence presented at trial regarding cocaine intoxication and cocaine-induced psychosis may be applied to a determination of a temporary overdose of cocaine in relation to the time of the shooting, and separately, to a cocaine-induced psychosis, which produces symptoms of paranoid delusions, suspiciousness, repetitive stereotypic behavior and hallucinations. Sillick also maintained the language from Iowa Criminal Jury Instruction 200.12 which was omitted from Jury Instruction 20 distinguishes between evidence of the capacity for specific intent and evidence (or lack thereof) of possessing the intent itself; in other words, the omitted portion of the model instruction tells the jury how to integrate its finding on the issue of intoxication or diminished responsibility with the other jury findings required for first-degree murder. Sillick argued he was prejudiced by not having two separate instructions that explained each defense.

Sillick further maintained the model Iowa Criminal Jury Instructions, which cite *State v. Hofer*, 238 Iowa 820, 28

N.W.2d 475 (1947), for the definitions of the specific intent elements and malice aforethought, omitted any jury findings on diminished responsibility and provided no guidance to ensure that diminished responsibility was determined by the jury before any guilty verdict to first-degree murder was authorized. Sillick urged that his trial and appellate counsel, unaware that the definitions of essential elements in the uniform instructions were not in accordance with *Hofer*, relied upon the incomplete model jury instructions rather than formulating or offering instructions which correctly state the law as set forth in *Hofer*. Sillick contended a fair trial would involve a jury verdict based on the essential elements as defined in *Hofer*. Therefore, Sillick averred, he demonstrated cause for showing the legal basis for his jury instruction claim of error was not reasonably available to trial or appellate counsel.

Sillick's final argument regarding Jury Instruction 20 is that his right to due process and equal protection were violated because the jury instructions improperly characterized the essential elements of first-degree murder. Sillick contended it was a violation of due process and equal protection to define the essential elements differently on a case-by-case basis. Sillick urged that although the State had the burden to disprove Sillick's defenses of intoxication and diminished responsibility, trial counsel was ineffective for failing to object that the jury instructions failed to state mental capacity for first-degree murder may be negated by either defense (properly defined), and therefore, must be separately applied to the evidence.

With regard to the second issue, i.e., whether Sillick received ineffective assistance of counsel regarding other trial-related issues, Sillick argued the failure of the Trial Information to set out the essential elements of the crime or to cite a particular statutory provision of first-de-gree murder constituted a substantive jurisdictional defect. In the alternative, if the Trial Information was determined to be insufficient but not defective, Sillick contended his counsel's failure to object to the Trial Information on the grounds it did not set out the essential elements of the crime or to cite a particular statutory provision of first-degree murder constituted ineffective assistance of counsel by which he was prejudiced. Sillick maintained his trial counsel was ineffective because he failed to object to the prosecutor's closing remarks challenging the legal basis of Sillick's theories of defense by telling the jury a lot of people do not like the intoxication defense and if those people had their way, they would do away with it. Furthermore, Sillick urged, the prosecutor's comments were so prejudicial they compromised his substantive rights because they were framed within the context of whether the jury empathized with Sillick or the victim's family. Sillick also claimed he received ineffective assistance of counsel when his attorney failed to object to the prosecutor's question and the State's expert's answer regarding whether Sillick had the mental capacity for malice and malice aforethought. Specifically, Sillick argued the his mental capacity for malice aforethought, a general intent element, was not placed at issue by raising the defenses of diminished responsibility and intoxication; by seeking and receiving testimony regarding Sillick's mental capacity for malice and malice aforethought, the State blurred the defenses between a premeditated, willful and deliberate intent to kill and the general intent of malice aforethought. Thus, Sillick urged, the State improperly confused and lessened the State's burden of proof as to what constitutes specific intent. Next, Sillick averred he received ineffective assistance of counsel because his trial counsel failed to object to the omission of a special verdict form

regarding diminished responsibility, as required by Iowa Rule of Criminal Procedure 21. Sillick then argued he received ineffective assistance of counsel where his lawyer failed to ask the trial court to reverse its ruling on the State's motion in limine regarding the statement excluded from Dr. Frederickson's written report during trial when Dr. Frederickson raised the issue by discussing other psychotic patients' cases and verdicts. Finally, Sillick urged combined errors may violate the right to effective assistance of counsel.

On September 11, 2002, the Iowa Court of Appeals affirmed the Iowa District Court for Linn County's decision denying Sillick's application for post-conviction relief. *See Sillick v. State*, No. 01–0284, 2002 WL 31015257, 2002 Iowa App. LEXIS 989 (Iowa App.2002). Specifically, the Iowa Court of Appeals, evaluating the jury instructions as a whole, determined the concepts embodied in the two paragraphs of Iowa Criminal Jury Instruction 200.12 which were omitted from the instructions given to the jury at Sillick's trial were adequately explained in the court's other jury instructions. *Id.* at 8–9. Therefore, the Iowa Court of Appeals concluded, there was no breach of duty or prejudice stemming from counsel's failure to object to the two paragraphs not being included. *Id.* at 9. With regard to Sillick's allegation that his right to due process and equal protection were violated because the essential elements of first-degree murder were not defined in the marshaling instruction as provided in *Hofer*, the Iowa Court of Appeals ruled the definitions were consistent with the definitions presented in *Hofer* and it found no due process or equal protection violations. *Id.* at 10. Addressing Sillick's contention that the marshaling instruction was inadequate because it failed to require the State to disprove his defenses as an added element, the Iowa Court of Appeals found this argument meritless and determined his

counsel was not ineffective for failing to raise the issue at trial. *Id.* The Iowa Court of Appeals, turning next to Sillick's argument the Trial Information was defective or at least inadequate, found the Trial Information complied with the content requirements of the Iowa Rules of Criminal Procedure and gave Sillick notice of the offense charged, which is all that is required. *Id.* at 11–12. With regard to Sillick's contention that he received ineffective assistance because his counsel failed to object to the prosecutor's allegedly improper closing remarks, the Iowa Court of Appeals ruled trial counsel's interpretation of the prosecutor's comment—asking the jury not to go too far and return a verdict of less than second-degree murder—was reasonable, and his decision not to object was a reasonable trial strategy. *Id.* at 13. Addressing Sillick's argument that trial counsel should have objected when the prosecutor asked and received an answer from its expert witness as to whether Sillick had the mental capacity to form malice or malice aforethought, the Iowa Court of Appeals found the question was not answered, but assuming it had been answered, there was no prejudice to Sillick in his trial counsel's failure to object because the State had to prove Sillick had malice aforethought as an essential element of first-degree murder. *Id.* at 14. Therefore, the Iowa Court of Appeals opined, the State was entitled to present evidence Sillick did not lack the capacity to have malice aforethought. *Id.* Turning to Sillick's claim trial counsel was ineffective in failing to object to the omission of a verdict form by which the jury could find him not guilty by reason of diminished responsibility, the Iowa Court of Appeals determined that, although trial counsel breached an essential duty by not being aware of and timely objecting to the omission of an appropriate instruction and verdict form, Sillick failed to prove resulting prejudice

because, as no one disputed Sillick actually committed the crime, there was no possibility Sillick would be acquitted and the special verdict form would be of significance only if there were a reasonable probability of complete acquittal. *Id.* at 15–16. Furthermore, the Iowa Court of Appeals ruled, the jury instructions and verdict forms that the trial court submitted were fully adequate to allow the jury to find Sillick not guilty of first-degree murder but guilty of a lesser included offense, or to find Sillick not guilty and acquit him, whether because of diminished responsibility or because the State otherwise did not prove its case; the jury's verdict of first-degree murder establishes beyond a reasonable doubt the jury rejected Sillick's theories of defense and found he had the requisite specific intent to kill. *Id.* at 16. Addressing Sillick's argument his trial counsel was ineffective for failing to ask the trial court to reverse its motion in limine ruling regarding the sentence removed from Dr. Frederickson's report, the Iowa Court of Appeals found Sillick showed neither a breach of duty nor resulting prejudice because, as the Iowa Supreme Court found on direct appeal, there was no abuse of discretion in the trial court's ruling as any relevancy was outweighed by possible prejudice to the State and any ineffectiveness claim derived from the same contention was moot. *Id.* at 17. Finally, the Iowa Court of Appeals determined, appellate counsel was not ineffective for failing to preserve the alleged errors on direct appeal. *Id.*

On October 1, 2002, Sillick applied to the Iowa Supreme Court for further review from the Iowa Court of Appeals' decision. In such application, Sillick argued trial and appellate counsel's failure to preserve error on the fundamentally flawed jury in-

structions constituted ineffective assistance of counsel. Specifically, Sillick maintained counsel was ineffective for failing to object to Instruction Number 20, regarding the combined defenses, and Instruction Number 15, regarding the essential elements of first-degree murder. Sillick did not raise the argument the combined errors violated his right to effective assistance of counsel, as he had done in his briefing to the Iowa Court of Appeals.

On December 2, 2002, the Iowa Supreme Court denied further review of Sillick's application for post-conviction relief. *Sillick v. State,* No. 01–284, 2002 WL 31015257 (Iowa App.2002) (en banc). Procedendo issued December 6, 2002.[7]

### D. Federal Post–Conviction Relief Proceedings

On December 30, 2002, Sillick filed the instant application for a writ of habeas corpus. In such application, Sillick argues he was denied effective assistance of counsel at trial and on direct appeal because (1) defense counsel failed to object to fundamentally flawed jury instructions that denied him due process of law and (2) the representation, in light of the record as a whole, was ineffective and unreasonable. Specifically, Sillick contends that after notifying the State that Sillick was going to raise intoxication and diminished responsibility as defenses to first-degree murder, and knowing the legal definition of each defense was separate and distinct, trial counsel failed to object to instructions that failed to define diminished responsibility and to distinguish it from intoxication. Furthermore, Sillick urges, defense counsel failed to preserve error regarding: (1) the fundamentally flawed jury instructions at each tier of the Iowa courts; and (2) the marshaling instruction submitted to the

---

7. Iowa civil and criminal court records are available online at the following website: http://www.iowacourts.state.ia.us. The only

record of procedendo being issued in this case is available online.

jury which commingled and misdefined essential elements of first-degree murder. Sillick argues the marshaling instruction failed to list all the jury findings and elements that the State had to prove before the jury was authorized to enter a verdict of guilty to first-degree murder as required by Iowa law. Sillick contends the State had the burden to disprove diminished responsibility and to prove the requisite specific intent for first-degree murder. Sillick maintains the jury was not informed in the marshaling instruction that before it could enter a verdict of guilty for first-degree murder, the lack of the State's proof of legal capacity absolutely precluded Sillick from harboring the specific intent for first-degree murder: the willful, deliberate and premeditated intent to take Wilson's life. Sillick contends the effect of the lack of legal capacity to a jury finding of specific intent was the very language omitted from the jury instructions in this case and which is expressly included in the Iowa Criminal Jury Instructions or the stock instructions. Sillick also contends defense counsel was ineffective for failing to raise due process and equal protection claims that the essential elements as defined and submitted to the jury in his case were at variance with the definitions of these essential elements in Iowa case law. Sillick's final ineffectiveness claim is that, examining the record as a whole, he was denied effective assistance of counsel because his trial counsel failed to obtain a separate verdict form on diminished responsibility; the prosecutor, without objection, illegally disparaged the "defense" of diminished responsibility in the abstract; and trial counsel failed to present impeachment evidence of a State expert. Sillick contends he is entitled to relief because the decision of the Iowa Court of Appeals was an unreasonable application of the law and violated United States Supreme Court precedent.

On March 17, 2003, the court conducted an initial review of Sillick's application for a writ of habeas corpus and ordered Respondent to file an answer. On April 17, 2003, Respondent filed such answer. On August 27, 2003, the court entered an order establishing a briefing schedule.

On October 2, 2003, Sillick submitted a brief in support of his application for a writ of habeas corpus. In such brief, Sillick contends he was denied effective assistance of trial and appellate counsel for the following reasons: (1) defense counsel failed to challenge jury instructions which contained due process violations; (2) defense counsel failed to challenge the definitional components of the intent for first-degree murder which misdefined the requisite statutory intent and removed or lessened the State's burden of proof and denied him due process and equal protection; and (3) in light of the record as a whole, the representation at trial and on direct appeal was ineffective and unreasonable.

Specifically regarding the challenge to the jury instructions allegedly containing due process violations, Sillick argues the appellate review of his post-conviction relief proceeding was unreasonable because the Iowa Court of Appeals failed to determine whether Sillick's jury instructions conformed with United States Supreme Court case law and further failed to review his case based on the jury instructions actually submitted in his case. Sillick urges the post-conviction relief appellate court fashioned an analysis to uphold his conviction by treating the separate and single jury finding in the marshaling instruction, Instruction Number 15, as a finding by the jury that it considered and made a determination as to Sillick's ability to form intent and his possession of it. Sillick avers that from the standpoint of the jury instructions and jury findings pre-

sented in his case, the jury could not have considered and determined Sillick's ability to form intent and his possession of the requisite intent without violating due process. Sillick maintains the Iowa Court of Appeals in its post-conviction relief review of the ineffectiveness of counsel did not apply an appropriate and reasonable standard of review; that is, whether there was a reasonable likelihood that the jury had applied the challenged instruction in a way that violates the United States Constitution. Without trial counsel's securing of proper jury instructions regarding the determination of whether he had the mental capacity to form specific intent, Sillick contends, there existed a reasonable probability, but for counsel's unprofessional error, that the result of the proceedings would have been different. Sillick argues the jury was never informed that its finding related to a premeditated, deliberate and willful intent to kill inherently included a finding that the State had proved beyond a reasonable doubt that Sillick did not lack the mental capacity at the time of the shooting because of diminished responsibility or intoxication. Without informing the jury in Instruction Number 15 that the State must prove mental capacity, Sillick contends, the sole jury finding that Sillick harbored specific intent constituted a conclusive presumption that Sillick was also able to form the specific intent without a jury determination on the issue. In the Iowa Court of Appeals' review of the post-conviction relief proceedings, Sillick maintains, the court unreasonably applied principles of law without delineating whether the jury was informed about them and made determinations in conformity with the principles of law. Sillick argues the Iowa Court of Appeals' post-conviction relief decision is contrary to the United States Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in which the Supreme Court placed the obligation

on trial counsel, rather than a state trial court, to make an independent examination of the pleadings and laws involved with a particular defense. Sillick avers trial counsel relied upon the trial judge to find an instruction that correctly informed and instructed the jury on mental capacity, integrated the defenses with a jury finding on specific intent, and interposed a determination of the defenses before the jury was authorized to enter a guilty verdict of first-degree murder.

Regarding the challenge to the elements of first-degree murder and the allegation of ineffectiveness due to counsel's lack of challenge to the failure to include each and every element the State must have proven or disproven in the instruction regarding first-degree murder, Sillick argues the definitions of the essential elements of first-degree murder in Iowa Criminal Jury Instructions 700.5 and 700.6, upon which the jury instructions in his trial were based, are fundamentally flawed because they materially differ from the definitions of those elements in *Hofer,* 28 N.W.2d at 475. Sillick contends the due process clause protects him from being convicted unless the State proves beyond a reasonable doubt every fact necessary to constitute the crime with which he was charged. Because the jury was without proper instructions on the essential elements of first-degree murder, Sillick urges his due process rights were violated. Sillick also contends the flawed jury instructions violated his right to equal protection under the law.

Regarding the challenge to the effectiveness of counsel during trial as a whole, Sillick contends his trial and appellate counsel were ineffective in the totality of the circumstances and within the context of the failure of counsel to: (1) challenge a trial information devoid of essential elements; (2) object to the omission of a diminished responsibility verdict form; (3)

challenge the prosecutor's closing argument; and (4) exercise Sillick's right to compulsory process in regard to impeachment of Dr. Frederickson's trial testimony.

On November 18, 2003, Respondent filed a resistance, asking the court to deny habeas relief.

On December 2, 2003, Sillick filed a reply brief in which he additionally argues the Iowa Court of Appeals, in deciding the ineffectiveness claim during the post-conviction relief proceedings, did not address the underlying *Hofer* instructional claim as a violation of federal due process and equal protection; neither did the Iowa Court of Appeals apply the harmless error standard to the underlying due process claim. Sillick contends this failure was both contrary to prior United States Supreme Court precedent and was an unreasonable review process. Sillick maintains he relies on state law for his due process claims and on the *Hofer* definitions of specific intent for first-degree murder. Sillick avers the Iowa Court of Appeals' decision failed to recognize that Iowa law permits a defendant to present as many defenses as are available. Sillick further urges that the Iowa Court of Appeals ignored the facts of his case—that legal capacity was the critical issue of controversy—when it concluded that because the marshaling instruction included one of the prongs of the intent determination, i.e., whether Sillick harbored the specific intent, that this was equivalent to a jury finding on both legal capacity for intent and the harboring of intent. A reviewing court, Sillick argues, has no way of knowing whether Instruction Number 20 was considered by the jury in its determination of first-degree murder. Therefore, Sillick continues, the decision of the Iowa Court of Appeals was contrary to United States Supreme Court and Iowa Supreme Court precedent and, thus, it was an unreasonable decision. Sillick further avers the United States Su-

preme Court decisions hold it is a due process violation where jury instructions in a criminal case set out either a conclusive or mandatory rebuttable presumption that relieves the prosecution of the burden of persuasion on the presumed fact. Here, Sillick argues, Instruction Number 15 only contained a jury finding on specific intent. Sillick contends the Iowa Court of Appeals used this single finding to conclusively presume that the jury considered and determined Sillick had the capacity to formulate the requisite intent. Sillick contends the Iowa Court of Appeals provided a *de novo* review of the substantive ineffectiveness claims but refused to treat counsel's failure to challenge the fundamentally flawed instructions, that is, the due process violations, under the harmless error standard. Sillick argues the actual marshaling instruction given at his trial omits a jury finding of mental capacity; such omission cannot be considered harmless. Sillick further avers the jury findings listed for conviction of first-degree murder in his case conclusively presume the jury considered and rejected the lack of mental capacity even though the jury findings in the actual marshaling instruction never informed the jury that this would be so.

On December 4, 2003, Respondent filed a response to Sillick's reply brief.

On June 18, 2004, Chief Magistrate Judge Jarvey issued a Report and Recommendation in this case, recommending the court deny Sillick's application for a writ of habeas corpus. Specifically, Chief Magistrate Judge Jarvey determined the state courts' post-conviction relief rulings regarding Sillick's ineffective assistance of counsel claims were not unreasonable applications of the *Strickland* standard.

On June 28, 2004, Sillick filed objections to such Report and Recommendation, claiming Chief Magistrate Judge Jarvey erred in the following ways: (1) Chief

Magistrate Judge Jarvey gave preclusive effect to the state courts' decisions in the post-conviction relief proceedings; (2) he failed to apply the proper standard of review; (3) he ignored the "sufficient reasons" Sillick asserted for overcoming a procedural default and for not raising and litigating the supplemental ineffectiveness claims added to the ineffectiveness claim preserved by the Iowa Supreme Court on direct appeal; (4) he did not consider or note Sillick twice amended his post-conviction relief application, adding grounds to the original ineffectiveness claims based on the final jury instructions; (5) he improperly analyzed the ineffectiveness of counsel in failing to object to the final instructions on the basis of the definitions of elements, a conclusive presumption, and combined and merged defense instructions; (6) he failed to apply his legal analysis to the content of the actual jury instructions submitted in Sillick's trial; (7) he incorrectly found Sillick seeks to challenge the jury instructions themselves apart from any ineffectiveness claim; (8) with regard to Instruction Number 20, he made no independent finding on whether the reason for trial counsel's tactical choice relates to each deficiency allegedly contained therein but instead relies on the conclusions of the prior courts that counsel's decision was within the normal range of competency and there was no evidence to support a finding the combined instruction was confusing; (9) he incorrectly determined any concepts not included in Instruction Number 20 were adequately explained in other instructions, because Instruction Number 20 was the only instruction on diminished responsibility and intoxication; (10) without discussion of the contents of Instruction Number 20, he found trial counsel reasonably relied upon the trial court's representation the combined instruction (found in Instruction Number 20) had been used in a similar case; (11) he is incorrect that Sillick must demonstrate the outcome of the trial would have been different but for counsel's ineffectiveness; (12) his legal analysis fails to make findings on the actual instructions submitted in Sillick's trial, especially in light of the marshaling instruction (number 15), specific intent instruction (number 19) and theories of defenses instruction (number 20); (13) he erroneously concluded that because Instruction Number 20 contains language that requires the jury to find legal capacity and the possession of intent, the instructions as a whole do not violate due process; (14) he improperly concluded no due process violation occurred where Instruction Number 15 solely contained a finding that Sillick possessed the specific intent for murder without explicitly requiring a finding on mental capacity or any reference to any other instruction which interposes such a requirement before a first-degree murder verdict is authorized; (15) he relied upon two cases irrelevant to the standard of how a reasonable juror may have interpreted the instructions given in Sillick's trial; (16) he ignored two fundamental due process considerations—the jury is explicitly told in Instruction Number 15 what findings are necessary for a verdict of first-degree murder and mental capacity is not included in such instruction; (17) he failed to consider all grounds urged against Instruction Number 20 and to review the impact of this instruction from the standard of a reasonable juror; (18) without a comparative analysis of *Hofer* and the Iowa Criminal Jury Instructions, Chief Magistrate Judge Jarvey made the conclusory statement that equal protection and due process were not violated; (19) Chief Magistrate Judge Jarvey's report fails to provide the analysis needed to determine whether the state's application of the law is unreasonable; (20) he failed to compare the *Hofer* definitions of the elements of specific intent with the definitions in the Iowa Criminal Jury Instructions in

754

order to assess the prejudice to Sillick and determine whether the state court application was unreasonable.

On June 29, 2004, Respondent filed a response to Sillick's objections.

Finding the 28 U.S.C. § 2254 application to be fully submitted and ready for decision, the court now turns to address the merits of such application.

## III. STANDARD OF REVIEW

■ The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1)(C). *See also* Fed. R.Civ.P. 72(b) (provides for review of a magistrate judge's recommendation on dispositive motions and prisoner petitions). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose,* 80 F.3d 298, 306 (8th Cir.1996) (citing 28 U.S.C. § 636(b)(1); *Grinder v. Gammon,* 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett,* 15 F.3d 803, 815 (8th Cir.1994)); *Hudson v. Gammon,* 46 F.3d 785, 786 (8th Cir.1995) (same). However, the plain language of the statute governing review provides only for *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Therefore, portions of the proposed findings or recommendations to which no objections were filed are reviewed only for "plain

error." *See Griffini v. Mitchell,* 31 F.3d 690, 692 (8th Cir.1994) (reviewing factual findings for "plain error" where no objections to the magistrate judge's report were filed).

## IV. 28 U.S.C. § 2254 MOTION

It appears Sillick objects to all of Chief Magistrate Judge Jarvey's conclusions. The court now turns to consider the issues *de novo.*

### A. Applicable Standard

"[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The power of the federal courts to review state convictions under 28 U.S.C. § 2254 is limited. *Jolly v. Gammon,* 28 F.3d 51, 54 (8th Cir.1994) (citing *Carter v. Armontrout,* 929 F.2d 1294, 1296 (8th Cir.1991)). Habeas corpus relief is available only where errors of constitutional magnitude have occurred. *Id.* (citing *Carter,* 929 F.2d at 1296).

A habeas petitioner must show more than error requiring reversal on direct appeal to obtain relief. He must show the alleged error rendered the entire trial fundamentally unfair—that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety, the verdict probably would have been different.

*Harris v. Bowersox,* 184 F.3d 744, 752 (8th Cir.1999) (quoting *Carter,* 929 F.2d at 1296).

### B. Analysis of Properly Exhausted Claims

In this case, Sillick raises two ineffective assistance of counsel claims which were

adjudicated on the merits in state court proceedings: (1) counsel was ineffective for failing to object to fundamentally flawed jury instructions which violated Sillick's right to due process because they improperly combined and misdefined his theories of defense and omitted any reference to the fact the State had to disprove the defenses; and (2) counsel was ineffective for failing to object to an instruction regarding the definitions of specific intent elements, which violated Sillick's right to due process and equal protection because the instruction did not use language to define the elements identical to the language approved by the Iowa Supreme Court in *Hofer.* Pursuant to 28 U.S.C. § 2254,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, "[28 U.S.C. § ] 2254(d) distinguishes between two types of erroneous decisions-those of law and those of fact-and treats each in separate subparagraphs." *Weaver v. Bowersox*, 241 F.3d 1024, 1029 (8th Cir.2001). Claims of legal error are governed by the former while claims of factual error fall within the latter. *Id.* at 1029-30. Sillick seeks relief under the former—28 U.S.C. § 2254(d)(1).

Under 28 U.S.C. § 2254(d)(1), a state prisoner may obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state court only through a showing that the state court's decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. The United States Supreme Court's opinion in *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), explains the meaning of those statutory concepts and the degree of deference that must be afforded to state court determinations on the merits ·in federal habeas corpus proceedings concerning state prisoners under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Newman v. Hopkins,* 247 F.3d 848, 850–52 (8th Cir.2001) (discussing effect of *Williams* ).

Under *Williams,* a state-court decision can be "contrary to" United States Supreme Court precedent in two ways: (1) if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams,* 529 U.S. at 405, 120 S.Ct. 1495. Further, "the [statutory] phrase 'clearly established Federal law, as determined by the Supreme Court of the United States,' ... refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412, 120 S.Ct. 1495.

An "unreasonable application" of United States Supreme Court precedent can also arise in two ways. The Supreme Court explained:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state pris-

oner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407, 120 S.Ct. 1495 (citing *Green v. French,* 143 F.3d 865, 869–70 (4th Cir. 1998)). Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involv[ing] an unreasonable application of ... clearly established federal law.'" *Id.* Notably, however,

> [u]nder [28 U.S.C.] § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas [corpus] court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 411, 120 S.Ct. 1495.

Applying these standards to the present case, the court's inquiry must be whether the Iowa courts reached a decision contrary to that reached by the United States Supreme Court on a question of law, or alternatively, whether the Iowa courts correctly identified the applicable principles of federal law but then unreasonably applied that law to the facts of Sillick's claim. *See, e.g., Newman,* 247 F.3d at 850–52 (discussing *Williams* ); *Weaver,* 241 F.3d at 1029–30 (same); *Closs v. Weber,* 238 F.3d 1018, 1020 (8th Cir.2001) (same); *Copeland v. Washington,* 232 F.3d 969, 973 (8th Cir. 2000) (same). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62,

67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Determinations of state law made by the state courts are binding. *See Crump v. Caspari,* 116 F.3d 326, 327 (8th Cir.1997).

### 1. Ineffective Assistance of Counsel Standard

Sillick asks the court for habeas corpus relief because he allegedly received ineffective assistance of counsel at the trial and appellate levels. Specifically, Sillick contends his trial and appellate counsel's deficient performance was of constitutional proportion because counsel failed to object that the essential elements of first-degree murder in the jury instructions were fundamentally flawed, violating Sillick's rights to due process and equal protections of the laws. The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const., Amend. VI. Furthermore, criminal defendants have a constitutional right to effective assistance of counsel in their first appeal. *Evitts v. Lucey,* 469 U.S. 387, 393–95, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Douglas v. Cal.,* 372 U.S. 353, 356–57, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). The Sixth Amendment right to effective counsel is clearly established. *See Strickland v. Wash.,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the United States Supreme Court explained that a violation of that right has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that

counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S.Ct. 2052; *see also Armstrong v. Kemna*, 365 F.3d 622, 627 (8th Cir.2004) (reasserting *Strickland* standard). Thus, *Strickland* requires a showing of both deficient performance and prejudice. However, "a court deciding an ineffective assistance claim need not address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. "If it is easier to dispose of an ineffectiveness claim on grounds of lack of sufficient prejudice, ... that course should be followed." *Id.; see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir.1996) ("[A court] need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice.").

To establish unreasonably deficient performance, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. The "reasonableness of counsel's challenged conduct [must be reviewed] on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. 2052. There is a strong presumption of competence and reasonable professional judgment. *Id.; see also United States v. Taylor*, 258 F.3d 815, 818 (8th Cir.2001) (operating on the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance") (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052); *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (broad latitude to make strategic and tactical choices regarding the appropriate action to take or refrain from taking is afforded when acting in a representative capacity) (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). In sum, the court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. 2052. Rather, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. In other words, "the question is whether there is a reasonable probability that, absent those errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2052. In answering that question, the court "must consider the totality of the evidence before the judge or jury." *Id.*

### 2. Combined Defense Instruction and Marshaling Instruction Errors

Sillick raises two claims which he combines into one overall argument. First. Sillick argues his trial and appellate counsel were ineffective for failing to object to the theory of defense instruction which combined the concepts of "diminished responsibility" and "intoxication." Second, Sillick argues his trial counsel was ineffective for failing to object to the omission of any reference to the defenses in the marshaling instruction. Because appellate counsel raised the latter issue on direct appeal, Sillick limits that argument to only trial counsel. In support of his ineffective assistance claims, Sillick contends the jury instructions given, Instruction Number 20 regarding the theories of defense and Instruction Number 15 listing the essential elements the State must prove in order to convict Sillick of first-degree murder, violated his right to due process pursuant to

*In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983). In support of his contention, Sillick avers the Iowa courts' decisions, in conducting post-conviction relief proceedings, were contrary to, or involved an unreasonable application of *Strickland* because, Sillick maintains, *Strickland* places an obligation on trial counsel, rather than the trial court, to make an independent examination of the pleadings and laws involved in the potential defenses available.

### a. Combined Defense Instruction

■ Jury Instruction 20, the instruction regarding Sillick's theories of defense, reads:

> "Diminished responsibility" means a mental condition which does not allow the person to form a specific intent. Concerning element number 4 of Instruction No. 15, it means a mental condition which does not allow the person to form a premeditated, deliberate, specific intent to kill.
>
> "Diminished responsibility" does not entirely relieve a person of the responsibility for his actions and is not the same as an insanity defense.
>
> The Defendant claims he was under the influence of drugs at the time of the alleged crime. The fact that a person is under the influence of drugs does not excuse nor aggravate his guilt.
>
> Even if a person is under the influence of a drug, he is responsible for his act if he had sufficient mental capacity to form the specific intent necessary to the crime charged or had the specific intent before he fell under the influence of the drug and then committed the act.

> Intoxication is a defense only when it causes a mental disability which makes the person incapable of forming the specific intent.
>
> Neither "diminished responsibility" nor "intoxication" can reduce Second Degree Murder to Manslaughter.
>
> The Defendant does not have to prove "diminished responsibility" or "intoxication"; rather, the burden is on the State to prove the Defendant was able to, and did, form the specific intent required.

*State v. Sillick,* No. 6–569/95–0578, Appellant's Appx. at 617–18. Had the court read separately each defense instruction from the Iowa Criminal Jury Instructions, the instruction regarding diminished responsibility would have read:

> "Diminished responsibility" means a mental condition which does not allow the person to form a premeditated, deliberate, specific intent to kill.
>
> "Diminished responsibility" does not entirely relieve a person of the responsibility for his actions and is not the same as an insanity defense.
>
> You should determine from the evidence if the defendant was capable of premeditating, deliberating, and forming a specific intent to kill.
>
> If you have a reasonable doubt the defendant was capable of acting deliberately, with premeditation, and the specific intent to kill, then the defendant cannot be guilty of First Degree Murder. You should then consider lesser included charges.

Iowa Crim. Jury Instr. 200.12; *Sillick v. State,* No. 01–284, Appellant's Appx. at 597. The intoxication instruction would have read:

> The defendant claims he was under the influence of drugs at the time of the alleged crime. The fact that a person is

under the influence of drugs does not excuse nor aggravate his guilt.

Even if a person is under the influence of a drug, he is responsible for his act if he had sufficient mental capacity to form the specific intent necessary to the crime charged or had the specific intent before he fell under the influence of the drug and then committed the act. Intoxication is a defense only when it causes a mental disability which makes the person incapable of forming the specific intent.

Iowa Crim. Jury Instr. 200.14; *Sillick v. State*, No. 01–284, Appellant's Appx. at 597–98. The court notes the combined instruction given to the jury at Sillick's trial omits the language from the diminished responsibility instruction that informs the jury it must determine whether Sillick was capable of premeditating, deliberating, and forming a specific intent to kill, and if the jury has a reasonable doubt as to those elements, Sillick cannot be guilty of first-degree murder. *See* Iowa Crim. Jury Instr. 200.12; *Sillick v. State*, No. 01–284, Appellant's Appx. at 597. However, the court also notes the instruction given to the jury at Sillick's trial includes additional language informing the jury that Sillick does not have to prove his defenses, but instead, the State must prove Sillick "was able to, and did, form the specific intent required." *State v. Sillick*, No. 6–569/95–0578, Appellant's Appx. at 617–18.

The Iowa District Court for Linn County, in considering Sillick's application for post-conviction relief, addressed Sillick's claim regarding the combined theories-of-defense instruction as follows: "According to Mr. Grinde, the decision to combine the jury instructions of diminished responsibility and intoxication was tactical. He, and co-counsel Quint Meyerdirk, felt that it would be less confusing to the jury to use a combined instruction suggested by the presiding judge. There is no evidence on the record that the jury instruction was confusing to the jury." *Sillick v. State*, No. LACV033083 at 4.

In affirming the Iowa District Court for Linn County's ruling denying Sillick post-conviction relief, the Iowa Court of Appeals briefly summarized Sillick's argument and laid out the combined theories-of-defense instruction actually given at Sillick's trial and the portion omitted from the model instructions. *Sillick v. State*, No. 01–0284 at 7–8. The Iowa Court of Appeals then determined, regarding the combined theories-of-defense instruction, the following:

Sillick introduced evidence at trial that he suffered from cocaine intoxication and cocaine-induced psychosis at the time he shot Wilson. We assume without deciding that he was entitled to instructions on both defenses. Sillick's trial counsel testified at the postconviction hearing that because of the specific nature of this case in which the intoxication aspect and the diminished responsibility aspect were so intermeshed it would be more confusing to the jury to have two separate instructions. He thought the single instruction was easier for the jury to understand. As shown by defense counsel's testimony, it was a strategic decision to have one instruction cover both diminished responsibility and intoxication. Further, we evaluate instructions as a whole, not piecemeal or in artificial isolation. *State v. Chambers*, 529 N.W.2d 617, 620 (Iowa Ct.App.1994). Viewing the instructions as a whole, we believe the concepts embodied in the two paragraphs of Iowa Criminal Jury Instruction 200.12 that were not included in the trial court's instruction are adequately explained in the trial court's Instructions 2, 4, 6, 7, and 15, Iowa Criminal Jury Instructions 100.2, 100.8, 100.10, 100.11, and 700.1 respectively. We find no breach of duty or prejudice

in counsel not objecting to the two paragraphs not being included.

*Id.* at 8–9.

The court has reviewed the United States Supreme Court decisions which Sillick avers support his position the combined theories-of-defense instruction violated his right to due process. The court finds his reliance on such cases to be without merit. The court notes:

> [a]lthough hindsight may make a decision appear unwise or unsound, when scrutinizing counsel's performance a court "must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674.

*Underdahl v. Carlson,* 381 F.3d 740, 743 (8th Cir.2004). In light of this deferential standard, the court cannot say the holding of the Iowa Court of Appeals was an unreasonable application of clearly established federal law. Because the court cannot say the Iowa Court of Appeals' decision was contrary to, or involved an unreasonable application of any clearly established legal principle (particularly the cases Sillick cites) as determined by the United States Supreme Court, the court rejects Sillick's objection to Chief Magistrate Judge Jarvey's conclusion regarding the Iowa Court of Appeals' determination Sillick's trial counsel was not ineffective for failing to object to the combination defense instruction and the omission of essential elements of the defenses from Instruction Number 20.

### *b. Marshaling Instruction Errors*

■ Sillick contends he received ineffective assistance from trial counsel because of his attorneys' failure to object to the marshaling instruction (Instruction Number 15). Sillick maintains Instruction Number 15 was constitutionally defective because it did not inform the jury the State had to disprove his defenses, it did not in any way refer to the theory of defense instruction, and it did not indicate how the defenses were to be considered in relation to the essential elements of first-degree murder. Sillick avers the failure to mention his defenses and their involvement in the determination of whether the State had proved all of the essential elements of first-degree murder created a conclusive presumption that he could form the requisite specific intent where the jury was only asked if Sillick harbored such intent without a separate finding that he could form such intent.

Instruction Number 15 provides as follows:

> The State must prove all of the following elements of Murder in the First Degree:
>
> 1. On or about the 2nd day of May, 1994, the Defendant shot Tammi Wilson.
>
> 2. Tammi Wilson died as a result of being shot.
>
> 3. The Defendant acted with malice aforethought.
>
> 4 The Defendant acted willfully, deliberately, premeditatedly and with a specific intent to kill Tammi Wilson.

If the State has proved all of the elements, the Defendant is guilty of Murder in the First Degree. If the State has failed to prove any one of the elements, the Defendant is not guilty of Murder in the First Degree, and you will then consider the charge of Murder in the Second Degree as explained in Instruction No. 25.

*State v. Sillick,* No. 6–569/95–0578, Appellant's Appx. at 616–17. When considering Sillick's application for post-conviction relief, the Iowa District Court for Linn County did not specifically address Sillick's challenge to the omission of any reference to the theories of defense in the marshaling instruction. The court did, however, indicate it had examined all claims raised, including the instant claim, and found Sillick's "trial counsel as well as the appellate counsel acted well within the range of normal competency required of a defense attorney." *Sillick v. State,* LACV033083 at 4.

In affirming the Iowa District Court for Linn County's ruling denying Sillick postconviction relief, the Iowa Court of Appeals determined:

> Third, we address Sillick's contention that Instruction 15 was inadequate for failing to require the State to disprove his "defenses" as an added element, and find this contention meritless. The State is not required to disprove diminished responsibility or intoxication as an additional element in its proof. *State v. Rinehart,* 283 N.W.2d 319, 320 (Iowa 1979) (diminished responsibility); *State v. Templeton,* 258 N.W.2d 380, 383 (Iowa 1977) (intoxication). Furthermore, Instruction 20 (combined instruction) adequately informed the jury as to the defenses of diminished responsibility and intoxication. That instruction notified the jury that Sillick did not have the burden of proving the defenses, but instead the State had the burden of proving he was able to and did form the requisite specific intent. The instruction adequately defined the relationship between the defenses and specific intent.
>
> Counsel had no duty to raise these meritless issues, and Sillick suffered no

prejudice as a result of counsel not doing so.

*Sillick v. State,* No. 01–0284 at 10–11.

■ The court has reviewed the United States Supreme Court decisions which Sillick avers support his position that the marshaling instruction violated his right to due process. The cases upon which Sillick relies, *Francis,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344, and *Sandstrom,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, hold that the Due Process Clause prohibits mandatory presumptions in jury instructions which place the burden on a defendant to disprove an essential element of the crime charged. Mandatory presumptions "violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense." *Francis,* 471 U.S. at 314, 105 S.Ct. 1965 (citing *Patterson v. New York,* 432 U.S. 197, 215, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) for the proposition that "a State must prove every ingredient of an offense beyond a reasonable doubt and . . . may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense."). The Iowa Court of Appeals rejected Sillick's argument that the marshaling instruction created a mandatory presumption Sillick could form the requisite specific intent because the jury was only asked whether Sillick harbored such intent without a separate finding that he could form such intent.

The court finds the Iowa Court of Appeals' decision was not an unreasonable application of federal law. The court specifically finds nothing unreasonable about the conclusion Sillick suffered no prejudice as a result of counsel's failure to object to the omission of any reference to Sillick's defenses in the marshaling instruction. Taken as a whole, the instructions adequately informed the jury of the State's burden of proof and the fact Sillick did not

have to prove his defenses or disprove he harbored the requisite specific intent to commit first-degree murder. The court finds no discernable prejudice in the failure to object to jury instructions which, taken as a whole, do not fail to provide Sillick with due process. Furthermore, the court finds the Iowa Court of Appeals' decision was not contrary to the holdings of *Francis* or *Sandstrom*. Because the court cannot say the Iowa Court of Appeals' decision was contrary to, or involved an unreasonable application of any clearly established legal principle (particularly the cases Sillick cites) as determined by the United States Supreme Court, the court rejects Sillick's objection to Chief Magistrate Judge Jarvey's conclusion regarding the Iowa Court of Appeals' determination that Sillick's trial counsel was not ineffective for failing to object to the omission of reference to the defenses from Instruction Number 15. The court rejects Sillick's objection to Chief Magistrate Judge Jarvey's conclusion regarding the Iowa Court of Appeals' determination that Sillick's appellate counsel was not ineffective for failing to raise on direct appeal an objection to the omission of essential elements of the defenses from the marshaling instruction.

### 3. Definitions of Specific Intent Elements

■ Sillick contends his trial and appellate counsel were ineffective because they failed to object to an instruction which defined the elements of specific intent in language other than that found in *Hofer*. In order to raise this issue for the first time in post-conviction relief proceedings, Sillick argues his argument that the essential elements are flawed is novel. Specifi-

cally, Sillick maintains he has raised an issue the Iowa courts had not considered before his post-conviction relief proceedings. Sillick avers the definitions of the elements of specific intent found in the Iowa Criminal Jury Instructions are not the same as the definitions of those same terms in *Hofer*, 28 N.W.2d at 475, the Iowa Supreme Court decision which set forth the essential elements of first-degree murder in Iowa.[8] Because the Iowa Criminal Jury Instructions do not track the definitions in *Hofer* precisely, Sillick urges, use of the particular Iowa Criminal Jury Instruction violated his right to due process pursuant to *Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980). Sillick also argues *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) and *Pope v. Illinois*, 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) stand for the constitutional guarantee that a state court cannot misdefine and commingle essential elements of a crime. Furthermore, Sillick asserts, because his jury instructions are not identical to those approved in *Hofer*, the jury instruction defining specific intent for first-degree murder given in Sillick's trial deprived him of a fundamental liberty interest: the guarantee of being tried on the same definitions of specific intent which were used for the homicide trial in *Hofer*, and, thus, his right to equal protection under the law was violated pursuant to *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Sillick apparently offers evidence of the due process and equal protection violations merely to support his contention counsel was ineffective for failing to object to the instruction at trial rather than bringing separate due process and equal protection claims in his post-conviction relief application.[9]

---

8. The particular definitions Sillick challenges are those defining the terms "premeditation," "deliberateness," "willfulness," and "malice aforethought." *See* Petitioner's Br. at 51.

9. The court need not address *de novo* the underlying due process and equal protection issues of the allegedly flawed jury instruction because Sillick explicitly limited his objections to ineffective assistance of counsel

In *Hofer*, the Iowa Supreme Court approved of an instruction setting forth the definitions of the elements of specific intent as follows:

"[W]illful" means the act was the result of the conscious will of the perpetrator, was of purpose, intentional and not accidental; "deliberate" means the act was the result of a purpose formed after weighing the considerations for and against the doing of the act; "premeditated" means the act was thought of beforehand and done in pursuance of a prior intention or plan.

*Hofer*, 28 N.W.2d at 483. The instruction continued,

[F]or a killing done with malice aforethought to be willful, deliberate and premeditated does not mean the killing must have been conceived or intended for any particular length of time before the act is done; the will or purpose to do it, the deliberation and premeditation, and the killing may follow each other as rapidly as successive impulses of thought of the human mind.

*Id.* at 482–83. The Iowa Supreme Court also approved of an instruction informing the jury regarding the definition of "malice aforethought":

[M]alice aforethought is a fixed purpose or design to do some physical harm to another existing prior to the act complained of; it need not be shown to have existed for any length of time before, but only requires such deliberation as makes a person appreciate and understand at the time the act is committed its nature and probable consequences as distinguished from an act done in the heat of passion; it is sufficient if such

purpose was formed before and continued to exist at the time of the injury; malice includes not only hatred and ill will but also any other unlawful or unjustifiable motive which inspires one to injure another and it may be inferred from the willful doing of an unlawful act, without just provocation or excuse, with intent to injure the person of another; it may mean simply a vicious and wanton disregard of another's rights; malice may be express or implied; express malice indicates a wicked mind; malice may be implied from the unlawful use of a deadly weapon in a manner calculated to take the life of another.

*Id.* at 482. The 1993 version of the Iowa Criminal Jury Instructions, which were used in Sillick's trial, provide definitions of the elements of specific intent as: " 'Willful' means intentional or by fixed design or purpose and not accidental. 'To deliberate' is to weigh in one's mind, to consider, to contemplate, or to reflect. 'Premeditate' is to think or ponder upon a matter before acting." Iowa Crim. Jury Instr. 700.5; *Sillick v. State*, No. 01–284, Appellant's Appx. at 594. Iowa Criminal Jury instruction 700.6 provides, "Deliberation and premeditation need not exist for any particular length of time before the act." Iowa Crim. Jury Instr. 700.6; *Sillick v. State*, No. 01–284, Appellant's Appx. at 594. The Iowa Criminal Jury Instructions define "malice aforethought" as follows: " 'Malice aforethought' is a fixed purpose of design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time. It is sufficient if it exists any time before the killing." Iowa

claims. *See* Petitioner's Objections to Report and Recommendation at 7 ("The Magistrate's finding that Sillick seeks to challenge the jury instructions themselves is incorrect. Mr. Sillick discussed the constitutional deficiencies in certain instructions to demonstrate counsel

was ineffective."). The court finds Chief Magistrate Judge Jarvey's findings regarding the due process and equal protection issues of the allegedly flawed jury instruction did not rise to the level of plain error. *See Griffini*, 31 F.3d at 692.

Crim. Jury Instr. 700.7; *Sillick v. State,* No. 01–284, Appellant's Appx. at 594.

The Iowa District Court for Linn County, in considering Sillick's application for post-conviction relief, did not specifically address Sillick's claim regarding the definitions of the elements of specific intent for first-degree murder. The court did, however, indicate it had examined all claims raised, including the instant claim, and found Sillick's "trial counsel as well as the appellate counsel acted well within the range of normal competency required of a defense attorney." *Sillick v. State,* LACV033083 at 4.

In affirming the Iowa District Court for Linn County's ruling denying Sillick post-conviction relief, the Iowa Court of Appeals determined, regarding the instruction containing the definitions of specific intent for first-degree murder, the following:

> First, we address the issue involving the definitions. After reviewing the definitions, we find that although they do not quote *Hofer ver[bat]im,* they are consistent with *Hofer*'s definitions. Although the definition of "malice aforethought" is not complete in that the instruction informs the jury that it must exist before the act is committed but does not inform the jury it must also exist at the time of the act, the omission is not prejudicial because the marshalling instruction makes it clear it must also exist at the time of the act. *State v. Lee,* 494 N.W.2d 706 (Iowa 1993). Counsel had no duty to raise this meritless issue. *State v. Greene,* 592 N.W.2d 24, 29 (Iowa 1999).
>
> Second, we address Sillick's equal protection and due process claims. Due process requires that jury instructions adequately instruct the jury on the elements of first-degree murder and the

State's responsibility to prove them. *See State v. McMullin,* 421 N.W.2d 517, 519–20 (Iowa 1988). The inquiry is whether an allegedly ailing instruction so infected the entire trial that the result violates due process. *Id.* at 520. The Equal Protection Clause requires that all members of the same class be treated equally under like conditions. *State v. Haines,* 360 N.W.2d 791, 795 (Iowa 1985). Equal protection is not denied because in practice some inequality exists. *Id.* We find no due process or equal protection violations. The definitions at issue were adequate and materially followed the decisions in *Hofer* and *Lee.* Sillick has not indicated that he was a member of a protected class or that he was treated differently than similarly-situated defendants.

*Sillick v. State,* No. 01–0284 at 9–10.

In order for Sillick to prove deficient performance, he must demonstrate his counsel's performance was objectively unreasonable. *See Armstrong,* 365 F.3d at 627 (citing *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052). The court finds the failure to raise what Sillick admits is a novel issue of due process and equal protection violations resulting from fundamentally flawed model jury instructions was not objectively unreasonable. *See Brown v. United States,* 311 F.3d 875, 878 (8th Cir.2002) (ruling trial and appellate counsel's failure to raise a novel issue does not constitute deficient performance); *Wajda v. United States,* 64 F.3d 385, 388 (8th Cir.1995) ("[C]ounsel's performance is not deficient by failing to predict future developments in the law."). Counsel could not have predicted such novel argument would be raised during post-conviction relief proceedings.[10]

Because the court cannot say the Iowa Court of Appeals' decision was contrary to,

---

**10.** Because the court can discard this claim on the deficient performance issue, the court need not address the issue of prejudice. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052.

or involved an unreasonable application of any clearly established legal principle (particularly the cases Sillick cites) as determined by the United States Supreme Court, the court rejects Sillick's objection to Chief Magistrate Judge Jarvey's conclusion regarding the Iowa Court of Appeals' determination that Sillick's trial counsel was not ineffective for failing to object on the ground that the essential elements of first-degree murder in the jury instructions were fundamentally flawed. The court, therefore, also rejects Sillick's objection to Chief Magistrate Judge Jarvey's conclusion regarding the Iowa Court of Appeals' determination Sillick's appellate counsel was not ineffective for failing to raise the issue on direct appeal.

### C. Procedurally Defaulted Claim

Sillick raises a claim which was not adjudicated on the merits in state court proceedings—his allegation trial and appellate counsel were ineffective in the totality of the circumstances and within the context of the failure of counsel to challenge a trial information devoid of essential elements, to object to the omission of a diminished responsibility verdict form, to challenge the prosecutor's closing argument, and to exercise Sillick's right to compulsory process in regard to impeachment of Dr. Frederickson's trial testimony. The government argues such claim is procedurally defaulted because it was not raised in the state post-conviction relief proceedings.

 Before a petitioner may obtain federal habeas corpus review of his state confinement, he must first "exhaust" his federal claims in the appropriate state forum. 28 U.S.C. § 2254(b)(1).[11] "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); see also 28 U.S.C. § 2254(c).[12] In Iowa, exhaustion requires a petitioner to seek discretionary review from the Iowa Supreme Court after the Iowa Court of Appeals rejects an appeal argument. See O'Sullivan, 526 U.S. at 845–48, 119 S.Ct. 1728. The fair presentment component of the exhaustion requirement compels a petitioner to affirmatively:

refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.

Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir.1993) (quotations and citations omitted). A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas corpus petition have been properly raised in the prisoner's state court proceedings. Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir.1995); Flieger v. Delo, 16 F.3d 878, 884 (8th Cir.1994). See also Duncan v. Henry, 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) ("If state courts are to be given the opportunity to

---

11. 28 U.S.C. § 2254(b)(1) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
(A) the applicant has exhausted the remedies available in the courts of the State, or
(B) (I) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

12. 28 U.S.C. § 2254(c) provides:

An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

correct alleged violations of prisoner's federal rights, they must surely be alerted to the fact the prisoners are asserting claims under the United States Constitution.... mere similarity of claims is insufficient to exhaust remedies."); *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 8, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) (full and fair presentment of claims to the state court requires "full factual development" of the claims in that forum); *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir.1999) ("Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement.").

■ In *O'Sullivan*, the United States Supreme Court noted state courts are required to enforce federal law, so if a state prisoner claims his confinement for a conviction violates federal law, the prisoner should first raise the federal claims to the state courts for relief. *O'Sullivan*, 526 U.S. at 844, 119 S.Ct. 1728. The Supreme Court further opined,

> [b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process [on post-conviction relief].

*Id.* at 845, 119 S.Ct. 1728; *see also Laws v. Armontrout*, 834 F.2d 1401, 1412 (8th Cir.1987) ("The purpose of the fair presentation component of the exhaustion requirement is to give state courts the first opportunity to review federal constitutional issues and to correct federal errors made by the state's trial courts."). If a petitioner has not fully presented his federal claims in state court, the claims are barred in federal court and must be dismissed, unless the petitioner can either show both good cause for his failure to present the claims in state court and actual prejudice as a result of the alleged constitutional violation or demonstrate that failure to review the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Keithley*, 43 F.3d at 1218.

■ Sillick did raise the issue of ineffective assistance based on counsel's cumulative error in the totality of the circumstances before the Iowa District Court for Linn County and the Iowa Court of Appeals. However, Sillick failed to raise the claim when seeking further review from the Iowa Supreme Court. The court finds Sillick's failure to raise the claim based on cumulative error in every tier of the state post-conviction relief proceedings has resulted in a procedural default of such claim. *See O'Sullivan*, 526 U.S. at 848, 119 S.Ct. 1728 (determining the petitioner's failure to present three of his federal habeas claims to the Illinois Supreme Court resulted in those claims being procedurally defaulted). Additionally, Sillick fails to show good cause for any failure to present his cumulative error claim to the Iowa Supreme Court and actual prejudice as a result of the alleged constitutional violation or a potential for the fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750, 111 S.Ct. 2546; *Keithley*, 43 F.3d at 1218. Therefore, the court denies Sillick's application for a writ of habeas corpus based on the allegation that, in the totality of the circumstances, he received ineffective assistance of trial and appellate counsel.

## V. CONCLUSION

In sum, the court finds Sillick is not entitled to relief pursuant to 28 U.S.C. § 2254. Accordingly, **IT IS HEREBY ORDERED:**

(1) Sillick's Objections to Chief Magistrate Judge Jarvey's Report and Recommendation (docket no. 19) are OVERRULED.

(2) The court ADOPTS as modified herein Chief Magistrate Judge Jarvey's Report and Recommendation (docket no. 18).

(3) The Clerk of Court is directed to enter judgment dismissing Sillick's 28 U.S.C. § 2254 petition.

**SO ORDERED.**

## REPORT AND RECOMMENDATION

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to petitioner Brian Sillick's application for a writ of habeas corpus under 28 U.S.C. § 2254 (docket number 1). Briefs on the merits of this matter have been submitted. This matter was referred to the undersigned United States Magistrate Judge for issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned recommends that the application for writ of habeas corpus be denied and this matter be dismissed.

## I. PROCEDURAL POSTURE

On June 13, 1994, petitioner Brian Sillick (Sillick) was charged with first degree murder, in violation of Iowa Code §§ 707.1, 707.2 and 902.7, for killing his girlfriend, Tammi Wilson, on May 2, 1994.[1] On January 30, 1995, Sillick's trial commenced.[2] On February 9, 1995, the jury found Sillick guilty of first degree murder. On March 10, 1995, the Linn County District Court sentenced Sillick to life imprisonment.

On March 31, 1995, Sillick filed a notice of appeal. On direct appeal, Sillick argued the district court abused its discretion when excluding impeachment evidence, the district court erred when denying his motions for judgment of acquittal, and counsel provided ineffective assistance of counsel because he failed to object to a combined diminished responsibility and intoxication jury instruction and failed to impeach the State's expert witness.[3] On February 26, 1997, the Iowa Court of Appeals rejected Sillick's claims, including his ineffective assistance of counsel claims, and affirmed Sillick's conviction.

On July 23, 1997, the Iowa Supreme Court reviewed Sillick's appeal; that is, it considered a challenge regarding the sufficiency of the evidence, a challenge concerning an evidentiary ruling and two challenges pertaining to ineffective assistance of counsel.[4] The Iowa Supreme Court found there was sufficient evidence to support the first degree murder conviction, the Linn County District Court did not abuse its discretion when ruling on an evidentiary matter and any ineffective assistance of counsel claim derived from the challenged evidentiary ruling was moot. With respect to the other ineffective assistance of counsel challenge, the Iowa Supreme Court found error had not been preserved on Sillick's challenge to the combined jury instruction because he failed to object to that instruction at trial. Nonetheless, the Iowa Supreme Court advised Sillick to "develop his ineffectiveness claim by way of a postconviction proceeding."

---

1. *See State v. Sillick,* FECR002422 (Linn County Dist. Ct.1995).

2. At trial, attorney David Grinde and attorney Quint Meyerdirk represented Sillick. On appeal, attorney Sharon Stevens represented Sillick.

3. *See State v. Sillick,* No. 6–569/95–0578 (Iowa Ct.App.1997).

4. *See State v. Sillick,* No. 162/95–578 (Iowa 1997).

Consequently, the Iowa Supreme Court preserved for a possible postconviction relief proceeding Sillick's claim that trial counsel was ineffective in failing to object to an instruction that combined the concepts of intoxication and diminished responsibility. Based on its review, the Iowa Supreme Court vacated the decision of the Iowa Court of Appeals and affirmed the judgment of the Linn County District Court. Procedendo issued September 12, 1997.

On June 16, 1998, Sillick challenged his conviction and resulting sentence by filing an application for postconviction relief in the Linn County District Court.[5] In his application for postconviction relief, Sillick claimed: (1) the Linn County District Court abused its discretion in excluding impeachment evidence from the record; (2) counsel did not provide effective assistance; and (3) the State did not prove beyond a reasonable ground that he committed first degree murder.[6] On November 21, 2000, the Linn County District Court denied Sillick's application for postconviction relief.

On November 30, 2000, Sillick filed an application for enlarged or amended findings pursuant to Iowa Rule of Civil Procedure 1.904(2). On December 7, 2000, the State resisted such application. On February 7, 2001, the Linn County District Court denied, for the most part, Sillick's application for enlarged or amended findings. The Linn County District Court only amended its findings to reflect the Iowa Supreme Court preserved for postconviction review Sillick's ineffective assistance of counsel claim based upon trial counsel's failure to object to the jury instruction because it combined diminished responsibility and intoxication and failed to adequately explain the defense of diminished responsibility.

On February 12, 2001, Sillick filed a notice of appeal. On appeal, Sillick argued he received ineffective assistance of counsel because trial counsel failed to object to a jury instruction which combined his defenses of diminished responsibility and intoxication.[7] Sillick also argued trial counsel provided ineffective assistance because he failed to allege: (1) the marshaling instruction on first degree murder misdefined the essential elements of that offense; (2) the Equal Protection Clause and

---

**5.** *See Sillick v. State,* LACV033083 (Linn County Dist. Ct.2000). Throughout his state postconviction proceeding, attorney Jon Kinnamon represented Sillick. Attorney Jon Kinnamon also represents Sillick in the instant action.

**6.** With respect to the second claim, Sillick argues he received ineffective assistance because his trial counsel did not:

1) object to jury instructions that improperly combined two separate defenses; 2) object to jury instructions that omitted language from the essential elements of first degree murder; 3) request the first degree murder marshaling instruction include a jury finding for each defense interposed thereby compelling the jury to consider and determine mental capacity prior to entering a first degree murder verdict; 4) object to the Trial Information that failed to allege the essential elements for first degree murder; 5) object to the State's improper closing remarks; 6) object to the State's questioning of its expert as to mental capacity for malice and malice aforethought which were not at issue; 7) object to the use of a verdict form other than the verdict form required by law in cases where the defense of diminished responsibility is asserted; 8) request a reversal of the Linn County District Court's ruling on the State's motion in limine regarding a portion of the State's expert deposition.

Because Sillick's postconviction claims were related, the Linn County District Court addressed all of them in the context of ineffective assistance of counsel.

**7.** *See Sillick v. State,* No. 01–0284, 2002 WL 31015257, 2002 Iowa App. LEXIS 989 (Iowa Ct.App.2002).

Due Process Clause are applicable; (3) the jury was not given a separate verdict form on the issue of diminished responsibility; (4) the first degree murder marshaling instruction did not include as an element a requirement that the mental capacity of the defendant was not either diminished or influenced by intoxication; (5) the trial information did not specify the alternative of first degree murder upon which the State was relying; (6) the State made an improper comment during closing argument; (7) the State's expert witness testified improperly regarding the defendant's mental capacity; and (8) the Linn County District Court's pretrial ruling in limine excluding expert testimony which would have compared the defendant's case to other cases should have been reconsidered. With respect to his eight other ineffective assistance of counsel claims, Sillick asserted various grounds, including ineffective assistance of appellate counsel, as sufficient cause or reason for not raising them on direct appeal. The Iowa Court of Appeals only addressed the ground asserting ineffective assistance of appellate counsel as sufficient cause or reason because it required a review of Sillick's ineffective assistance of counsel claims. After determining all of the ineffective assistance of counsel claims were wholly without merit, the Iowa Court of Appeals concluded Sillick only preserved error on his claim of ineffective assistance of counsel for failure to object to the combined jury instruction on diminished capacity and intoxication. When addressing the merits of such claim, the Iowa Court of Appeals concluded trial counsel was not ineffective in failing to object to the combined jury instruction on diminished capacity and intoxication. On September 11, 2002, the Iowa Court of Appeals affirmed the Linn County District Court's decision denying Sillick's application for postconviction relief. On December 2, 2002, the Iowa Supreme Court denied further review of Sillick's application for postconviction relief. On December 6, 2002, procedendo issued.

On December 30, 2002, Sillick filed the instant application for a writ of habeas corpus. In such application, Sillick contends he received ineffective assistance of counsel at trial and on direct appeal. To support his contention, Sillick states:

(1) trial counsel ... notified the [State] that [he] was going to raise intoxication and diminished responsibility as a defense to first degree murder, a specific intent crime. [Although] trial counsel ... knew that the legal definition of each defense was separate and distinct, [his] case was submitted to the jury under instructions that failed to define diminished responsibility and to distinguish it from intoxication....

(2) ... counsel failed to preserve error regarding fundamentally flawed jury instructions at each tier of the Iowa courts. The marshaling instruction submitted to the jury in [his] case commingled and misdefined essential elements of first degree murder as defined in *State v. Hofer*, 238 Iowa 820, 28 N.W.2d 475, 482–485 (Iowa 1947).

(3) the marshaling instruction failed to list all the jury findings and elements that the State had to prove before the jury was authorized to enter a verdict of guilty to first degree murder as required by Iowa law. The State had the burden to disprove diminished responsibility (legal capacity) and to prove the requisite specific intent for first degree murder....

(4) ... counsel ... failed to raise a due process and equal protection claim that the essential elements as defined and submitted to the jury in [his] case were at variance with the definition of [the] essential elements in *State v. Hofer*, 238 Iowa 820, 28 N.W.2d 475 (Iowa 1947).

(5) ... [the state trial record, examined as a whole, shows counsel provided inef-

fective assistance of counsel.] Trial counsel failed to obtain a separate verdict form on diminished responsibility[, the State, without objection,] illegally disparaged the "defense" of diminished responsibility in the abstract, and counsel failed to present impeachment evidence of a state expert.

On March 17, 2003, the court conducted an initial review of Sillick's application for a writ of habeas corpus and ordered the respondent to file an answer. On April 17, 2003, the respondent complied with the court's order. On August 27, 2003, the court entered an order establishing a briefing schedule.

Pursuant to the briefing schedule, Sillick submitted a brief supporting his application for a writ of habeas corpus. In such brief, Sillick asserts the theory of ineffective assistance of counsel and addresses three issues under such theory: (1) an instructional error on mental capacity; (2) an instructional error or misdescription of the statutory elements required for a specific intent; and (3) the totality of the circumstances.[8] In response to Sillick's brief on the merits, respondent submitted a brief. The respondent argues: (1) the determinations made by the courts of Iowa were not unreasonable in rejecting Sillick's claim that his trial co-counsel were ineffective in choosing to submit a combined jury

instruction on diminished responsibility and intoxication; (2) the determinations made by the courts of Iowa were not unreasonable in rejecting Sillick's claim that his trial co-counsel were ineffective for not raising various meritless issues generally relating to first degree marshaling instructions; (3) Sillick's claim of cumulative error is procedurally defaulted, fails to state a claim and is without merit; and (4) appellate counsel was not ineffective.

On December 2, 2003, Sillick filed a reply brief. Sillick argued: (1) "instructional due process issues of omitted finding of mental capacity from the [marshaling] instruction and a misdescription of elements of specific intent" and (2) "the [postconviction relief] trial court and the [postconviction relief] appellate courts ruled on the merits on all underlying ineffectiveness and ... his underlying postconviction claims were reviewable under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)." Based on Sillick's reply brief, respondent filed an additional brief on December 4, 2003. In that brief, the respondent asserted "that a litigant generally should not be allowed to argue for the first time in a reply brief any claim, issue, or legal argument abandoned in initial merits briefing." The respondent also discussed *Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), a case Sillick cited.[9]

---

8. In the body of his brief, Sillick describes these issues in the following manner: (1) ineffectiveness of trial counsel and appellate counsel to challenge the jury instructions that contained due process violations; (2) ineffectiveness of trial counsel and appellate counsel in failing to challenge the definitional components of the intent for first degree murder which misdefined the requisite statutory intent, removed or lessened the State's burden of proof and denied Sillick due process and equal protection; and (3) ineffectiveness of trial counsel and appellate counsel under the entirety of the circumstances, that is, in light of all omissions and failures, including no

challenge to a Trial Information void of essential elements, no objection to lack of a diminished responsibility verdict form, no challenge to the State's closing argument and no exercise of Sillicks' right to compulsory process in regard to the impeachment of expert trial testimony.

9. Given the various ways the arguments or issues are characterized, the court elects to address Sillick's three ineffective assistance of counsel arguments under the following headings: (1) Combined Jury Instruction on Diminished Responsibility and Intoxication; (2) Definitions and Elements in First Degree

## II. EVIDENCE AT TRIAL

On the morning of May 2, 1994, eight year old Lindsey Wilson awoke to the sound of her mother, Tammi Wilson, arguing with Sillick. Tammi Wilson got a donut for Lindsey Wilson. As she sat and ate her donut, Lindsey Wilson listened to Sillick and Tammi Wilson. Sillick yelled at Tammi Wilson, and Tammi Wilson cried. Lindsey Wilson watched as Sillick went into a bedroom, returned with a sawed-off shotgun, and shot her mother. Lindsey Wilson testified that, before Sillick shot her mother, she heard her mother say, "don't do this in front of my kids." Sillick shot Tammi Wilson three times with the sawed-off shotgun. Police later discovered a fourth hole from the shotgun in the carpeting on the hallway floor. Such hole was just above Tammi Wilson's head. Lindsey Wilson watched as Sillick, still holding the gun, retrieved his keys from the television room and "drove off." Sillick drove to the Cedar Rapids Police Station, approached several officers standing outside of the building, stuck out his hands, dropped his keys on the pavement, and announced: "I just shot somebody. I want to give myself up."

At trial, the case was defended on the theory that Sillick, due to his extensive use of cocaine and consumption of alcohol, did not have the requisite specific intent to kill Tammi Wilson in order to be convicted of first degree murder. Sillick asserted through evidence and testimony, not his own, that he had a history of depression, had a history of drug and alcohol abuse, had sought treatment for drug and alcohol abuse, had been using cocaine for several days prior to shooting Tammi Wilson and had been drinking beer on the morning of the crime. A defense expert testified that, during an interview with Sillick concerning the time prior to shooting Tammi Wilson, Sillick relayed that he had not slept for four days, had been hearing voices and had hallucinated through the morning of the shooting and had experienced paranoia and panic. According to expert testimony regarding an interview with Sillick, Sillick did not remember actually shooting Tammi Wilson but recalled stepping over her body and "beginning to hunt for his car keys." A defense expert testified that Sillick met the criteria for "cocaine psychosis" at the time of the shooting.

The jury relied on this evidence and other evidence presented at trial to find Sillick guilty of first degree murder. Similarly, the court relied on such evidence to sentence Sillick to life imprisonment.

## III. CONCLUSIONS OF LAW

### A. Standards Under 28 U.S.C. § 2254

Title 28 U.S.C. § 2254, states in pertinent part, that a person in custody pursuant to the judgment of a State court may seek a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Under 28 U.S.C. § 2254, the power of the federal courts to review state convictions is limited. *Carter v. Armontrout*, 929 F.2d 1294, 1296 (8th Cir. 1991). Habeas corpus relief is available only where errors of constitutional magnitude have occurred. *Id.; Newlon v. Armontrout*, 885 F.2d 1328, 1336 (8th Cir. 1989), *cert denied*, 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990).

A petitioner must show more than an error requiring reversal on direct appeal to obtain relief. He must show that the alleged error rendered the entire trial fundamentally unfair-"that there is a 'reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety, the verdict probably would have been differ-

Murder Instructions; and (3) Cumulative Error.

ent.'" *Newlon,* 885 F.2d at 1337 (quoting *Hamilton v. Nix,* 809 F.2d 463, 470 (8th Cir.) (en banc), *cert denied,* 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987)).

## B. Standard Regarding Ineffective Assistance of Counsel

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> [T]he right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

*Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (quoting *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). A criminal defendant is also entitled to effective assistance of counsel on a first appeal as of right. *Rogers v. United States,* 1 F.3d 697, 700 (8th Cir.1993); *Estes v. United States,* 883 F.2d 645, 648 (8th Cir. 1989).

The United States Supreme Court has reformulated the *Strickland* test for constitutionally ineffective assistance of counsel in *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), and the Eighth Circuit Court of Appeals has applied that test.

> Counsel is constitutionally ineffective under *Fretwell* when: (1) counsel's representation falls below an objective standard of reasonableness; and (2) the errors are so prejudicial that the adversarial balance between defense and prosecution is upset, and the verdict is rendered suspect.

*English v. United States,* 998 F.2d 609, 613 (8th Cir.1993) (citing *Lockhart,* 506 U.S. at 369–70, 113 S.Ct. at 842–43). Review of trial counsel's performance is deferential and the presumption is that trial counsel was competent and effective. *Strickland, supra,* at 689, 104 S.Ct. 2052; *Smith v. Lockhart,* 921 F.2d 154, 156 (8th Cir.1990). Reasonable trial strategy cannot rise to the level of ineffective assistance of counsel. *Id.* (citing *Stacey v. Solem,* 801 F.2d 1048, 1051 (8th Cir.1986)). Counsel's strategic decisions "made after a thorough investigation of law and facts ... are virtually unchallengeable," *Strickland, supra,* at 690, 104 S.Ct. 2052, even if those strategic decisions prove unwise. *Wing v. Sargent,* 940 F.2d 1189 (8th Cir.1991). Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. *Strickland, supra,* at 693, 104 S.Ct. 2052.

Where conduct does not prejudice the defendant, the court need not address the reasonableness of that conduct. *Id.* at 691, 104 S.Ct. 2052; *United States v. Williams,* 994 F.2d 1287, 1291 (8th Cir.1993). To determine whether there is prejudice, the court examines whether the result has been rendered "unreliable or fundamentally unfair" as the result of counsel's performance. *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *West v. United States,* 994 F.2d 510, 513 (8th Cir.1993). Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. *Id.* at 372, 113 S.Ct. 838; *West v. United States,* 994 F.2d 510, 513 (8th Cir.1993) (quoting *Fretwell* ). Prejudice does not exist unless "there is a reasonable probability that, but for counsel's ... errors, the result of the proceeding would have been different." *Strickland, supra,* at 694, 104 S.Ct. 2052; *Williams,* 994 F.2d at 1291 (quoting *Strickland* ).

### C. Sillick's Arguments Under 28 U.S.C. § 2254

As a preliminary matter, the court notes Sillick seeks to challenge the jury instructions themselves, in addition to challenging the effectiveness of his counsel in failing to object to the instructions on the basis of the definitions, elements, or the combined instruction. Such a challenge must fail because Sillick has not presented this claim to the state courts for exhaustion and therefore must demonstrate cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted constitutional claim. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), *McDonald,* 101 F.3d at 598.

In addition, a federal habeas court's power to set aside a state conviction on the basis of an allegedly improper jury charge is far more circumscribed than that exercised by an appellate court on direct review. *Guichard v. Smith,* 471 F.Supp. 784, 791 (E.D.N.Y.1979). The formulation of jury instructions primarily concerns the application and interpretation of state law and a federal habeas court is not to re-examine state-court determinations on state-law questions. *Louisell v. Director of Iowa Dept. of Corrections,* 178 F.3d 1019, 1022 (8th Cir.1999) (citing *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). A finding that a jury instruction is permissible under state law does not dispose of a due process inquiry. *See Louisell,* 178 F.3d at 1022 (citing *Estelle,* 502 U.S. at 68, 112 S.Ct. 475). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. *Id.* (citing *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). The inquiry is whether the ailing instruction, by itself, so infected the entire trial that the resulting conviction violates due process. *Id.* It is not enough for a petitioner to show that an instruction was "undesirable, erroneous, or even 'universally condemned.'" *Id.* (citing *Cupp,* 414 U.S. at 146, 94 S.Ct. 396). "Habeas corpus relief may be granted only when an erroneous jury instruction constituted 'a fundamental defect' that resulted 'in a complete miscarriage of justice, [or] an omission inconsistent with rudimentary demands of a fair trial.'" *Id.* (quoting *Crump v. Caspari,* 116 F.3d 326, 327 (8th Cir.1997)).

The court finds that the jury instructions, when viewed as a whole, were not misleading. *See Id.* (citing *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)). The instructions conveyed to the jury that whenever the court instructed that the state must prove something, it must do so beyond a reasonable doubt. They informed the jury that the state must prove all the elements of first degree murder, including that the defendant acted with malice aforethought, acted wilfully, deliberately, premeditatedly, and with a specific intent to kill Tammi Wilson. The instructions described diminished capacity and intoxication and their relationship to the specific intent to kill. They conveyed to the jury that Sillick did not have to prove diminished responsibility or intoxication but rather that the state had to prove that the defendant was able to, and did, form the specific intent required. The instructions informed the jury that murder in the second degree does not require a specific intent to kill. Thus, Sillick has failed to demonstrate ineffective assistance of counsel as cause for the procedural default and prejudice attributable thereto and may not obtain review of his defaulted claim concerning the jury instructions. *See Wainwright, supra,* at 72, 97 S.Ct. 2497.

### 1. Combined Jury Instruction on Diminished Responsibility and Intoxication

Sillick first contends that his trial counsel was ineffective for failing to object to a combined jury instruction, Instruction No. 20, on diminished responsibility and intoxication. Specifically, Sillick asserts that Instruction No. 20 was erroneous for its failure to adequately explain both the defenses of diminished responsibility and intoxication. In response, the respondent argues that Sillick's claims in regard to the combined jury instruction "consist largely of policy statements," that his trial counsel was not ineffective for failing to object to the combined instruction, and that the lower courts did not make an unreasonable determination in finding that Sillick's trial counsel was not ineffective.

On review of Sillick's application for postconviction relief, the Linn County District Court analyzed whether Sillick's trial counsel's decision to combine the jury instructions of diminished responsibility and intoxication was "tactical". *Sillick v. State*, LACV033083 (Linn County Dist. Ct.2000). The Linn County District Court noted that Sillick's trial counsel testified that he and his co-counsel felt that a combined instruction would be less confusing to the jury. *Id.* The Linn County District Court held that trial counsel's decision was well within the range of normal competency required of a defense attorney. *Id.* The Linn County Court of Appeals also held that there was no evidence in the record to support a finding that the combined jury instruction was confusing to the jury. *Id.* The Iowa Court of Appeals, on review of the Linn County District Court's postconviction relief decision, likewise pointed out that Sillick's trial counsel reportedly settled on the combined instruction because due to "the specific nature of this case in which the intoxication aspect and the diminished responsibility aspect were so in-

termeshed, it would be more confusing to the jury to have two separate instructions." *Sillick v. State*, No. 01–0284, 2002 WL 31015257, 2002 Iowa App. LEXIS 989 (Iowa App.2002). The Iowa Court of Appeals held that trial counsel's decision was "strategic," and that upon evaluation of the instructions as a whole, any appropriate concepts not included in the trial court's instruction on diminished capacity and intoxication were nevertheless "adequately explained" in other instructions. *Sillick v. State*, No. 01–0284, 2002 WL 31015257, 2002 Iowa App. LEXIS 989 (Iowa App. 2002) (citing *State v. Chambers*, 529 N.W.2d 617, 620 (Iowa Ct.App.1994)).

The court finds that Sillick's trial counsel's performance in adopting the combined jury instruction on diminished responsibility and intoxication did not fall below an objective standard of reasonableness. *See English, supra,* at 613. Trial counsel's decision to adopt the combined instruction was based upon a bona fide interest in avoiding juror confusion as to the defenses and also was made in reasonable reliance upon the trial court's representation that the combined instruction had been used in a similar case. Further, the record indicates that the experts at Sillick's trial generally agreed that the two conditions of diminished capacity and intoxication were closely related, and evidence concerning the two defenses was highly intermeshed during the trial. Moreover, as the respondent has pointed out, it is not at all clear that Sillick was entitled to an instruction on diminished capacity in addition to the instruction on intoxication. "When the evidence shows the mental condition at issue was caused by voluntary intoxication it is sufficient to instruct on that issue and not give an additional instruction on diminished responsibility generally." *State v. Aguilar*, 325 N.W.2d 100, 103 (Iowa 1982) (citing *State v. Collins*, 305 N.W.2d 434, 437–38

(Iowa 1981)). The court finds that in light of the evidence contained in the record, it was reasonable for Sillick's trial counsel to present their two defenses in a single instruction in an effort to avoid juror confusion and muster any additional strength which may have come from the jury's consideration of the two defenses together.

Even if the court were to determine that Instruction No. 20 was inadequate, which it has not, Sillick has failed to demonstrate that but for his trial counsel's conduct in adopting the combined instruction, the outcome of his trial would have been any different. *Strickland, supra,* at 694, 104 S.Ct. 2052. As the Linn County District Court found on review of Sillick's post conviction relief application, there simply is no evidence in the record which indicates that the combined jury instruction was confusing to the jury. The court finds that Instruction No. 20 adequately apprised the jury of both of the defenses asserted by Sillick. Accordingly, Sillick has failed to establish that he suffered prejudice as the result of his trial counsel's alleged errors. *See Lockhart, supra,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

Both the Linn County District Court and the Iowa Court of Appeals, on postconviction review, decided Sillick's ineffective assistance of counsel claim concerning the combined jury instruction on their merits. In *Williams v. Taylor,* The United States Supreme Court set forth the standard of review pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 for claims adjudicated on the merits in state court:

> *Section 2254(d)(1)* places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if

one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) 'was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States.'

*Williams v. Taylor,* 529 U.S. 362, 364–65, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is "contrary" if the state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court "on a set of materially indistinguishable facts." *Id.* A state court's decision is an "unreasonable application" of Federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the petitioner's case. *Id.* A federal habeas court should ask whether the state court's application of clearly established federal law was objectively unreasonable. *Evans v. Rogerson,* 223 F.3d 869, 872 (8th Cir. 2000) (citing *Williams,* 529 U.S. at 365, 120 S.Ct. 1495). A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the state court applied clearly established federal law erroneously or incorrectly, that application must also be unreasonable. *Copeland v. Washington,* 232 F.3d 969, 973 (8th Cir.2000) (citing *Williams,* 529 U.S. at 366, 120 S.Ct. 1495).

The court, having found that Sillick's trial counsel breached no duty in adopting the combined jury instruction, further finds that Sillick has failed to demonstrate resulting prejudice. *See Strickland, supra,* at 694, 104 S.Ct. 2052. Accordingly, the court finds that the lower courts' determination of Sillick's ineffective assis-

tance of counsel claim was not an "unreasonable" application of the *Strickland* standard.

## 2. Definitions and Elements in First Degree Murder Jury Instructions

Sillick next contends that he was denied effective assistance of counsel because his trial and appellate counsel failed to object to the jury instructions on first degree murder on the basis that they "omitted, misdefined, or merged essential elements of first degree statutory murder." [10] Specifically, Sillick contends that because the Iowa Criminal Jury first degree murder instructions cite as authority the 1947 case of *State v. Hofer*, instructions on first degree murder in Iowa cannot deviate from the *Hofer* definitions, as his did.[11] Sillick also contends that Instruction No. 15 should have contained an explicit finding on mental capacity or a reference to the mental capacity instruction contained in Instruction No. 20. In response, the respondent argues that the first degree murder instructions in Sillick's trial were not erroneous, that Sillick's trial and appellate counsel were not ineffective for failing to raise the issue, and, accordingly that the Linn County District Court's and the Iowa Court of Appeals' dismissal of Sillick's claim concerning the first degree murder instructions was not unreasonable.

The Linn County District Court, on review of Sillick's application for postconviction review, did not specifically address Sillick's claim regarding the first degree murder instructions on the merits, but indicated that they had nevertheless examined the claim and found that Sillick's "trial counsel as well as [his] appellate counsel acted well within the range of normal competency required of a defense attorney." *Sillick v. State*, LACV033083 (Linn County Dist. Ct.2000). When reviewing the Linn County District Court's denial of postconviction relief, the Iowa Court of Appeals dismissed Sillick's claim concerning the definitions contained in the first degree murder jury instructions. *Sillick v. State*, No. 01–0284, 2002 WL 31015257, 2002 Iowa App. LEXIS 989 (Iowa App.2002). Before doing so, the Iowa Court of Appeals held that the first degree murder instructions in Sillick's trial were consistent with the *Hofer* definitions and did not violate Sillick's due process or equal protection rights. *Id.* The Iowa Court of Appeals also held that, although the definition of "malice aforethought" in Sillick's trial instructions was incomplete in that it did not inform the jury that the requisite mental state must continue to exist at the time the act was committed, such omission was "not prejudicial because the marshaling instruction makes it clear it must also exist

---

10. The Linn County District Court used Iowa Criminal Jury Instructions 700.5 and 700.6 to define the elements of first degree murder in the jury instructions. The Iowa Criminal Jury Instructions on first degree murder cite as authority *State v. Hofer*, 238 Iowa 820, 28 N.W.2d 475 (Iowa 1947).

11. In *State v. Hofer*, the instruction which was approved by the court on "malice aforethought," was, in relevant part as follows:

[M]alice aforethought is a fixed purpose or design to do some physical harm to another existing prior to the act complained of; it need not be shown to have existed for any length of time before … it is sufficient if

such purpose was formed before and continued to exist at the time of the injury … *State v. Hofer*, 238 Iowa 820, 28 N.W.2d 475, 482 (Iowa 1947). The instruction on wilfulness approved by the *Hofer* court read, " 'wilful' means the act was the result of the conscious will of the perpetrator, was of purpose, intentional and not accidental." *Id.* at 483. The *Hofer* court also approved an instruction on "deliberateness" which read, "the act was the result of a purpose formed after weighing the considerations for and against the doing of the act." *Id.* Finally, the *Hofer* court approved the following instruction on "premeditation:" " 'premeditated' means the act was thought of beforehand and done in pursuance of a prior intention or plan." *Id.*

at the time of the act." *Id.* (citing *State v. Lee,* 494 N.W.2d 706, 707 (Iowa 1993)).[12] The Iowa Court of Appeals went on to hold that Instruction No. 15 was not inadequate for failing to require the State to disprove Sillick's defenses as an added element of their case because the State simply is not required to do so. *Id.* (citing *State v. Rinehart,* 283 N.W.2d 319, 320 (Iowa 1979) (diminished responsibility); *State v. Templeton,* 258 N.W.2d 380, 383 (Iowa 1977) (intoxication)). Finally, the Iowa Court of Appeals held that Instruction No. 20, which instructed the jury as to the defenses of diminished responsibility and intoxication, adequately informed the jury as to Sillick's defenses and the State's burden to prove that Sillick "was able to, and did, form the specific intent required." *Id.*

■ The court finds that Sillick's trial and appellate counsels' decisions not to object to or raise as an issue the definitions and elements contained in the first degree murder instructions did not fall below an objective standard of reasonable representation. *English, supra,* at 694. In regard to Sillick's contention that the first degree murder instructions in his case should not have varied from the definitions in *Hofer,* the court finds that there is no mandate that first degree murder instructions must be a verbatim recitation of the definitions approved of in *Hofer.* *See Hall v. State,* 665 N.W.2d 439, 2003 WL 1524140 (Iowa App.2003). "It is well settled that a trial court need not instruct in a particular way so long as the subject matter of the applicable law is correctly covered when all the instructions are read together." *State v. Uthe,* 542 N.W.2d 810, 815 (Iowa 1996) (citing *State v. Monk,* 514 N.W.2d 448, 450–51 (Iowa 1994)). The fact that an instruction may be less preferable than another does not mean that the less preferable instruction is erroneous. *See Uthe, supra,* at 815. Rather, the appropriate determination is whether the instructions actually given were adequate to instruct the jury on any given element of the offense. *See Id.* There were no material elements of the offense omitted from the jury instructions in Sillick's trial. When considered as a whole, the instructions in Sillick's trial accurately conveyed to the jury the definitions and elements of first degree murder, and Sillick's defenses, under Iowa law.[13] With respect to Sillick's argument that the jury instruction defining premeditation, deliberation, and malice aforethought was improper for failing to specify that each must continue to exist at the time of the criminal act, the court finds that the instruction was proper. *Hall, supra,* at *3, 665 N.W.2d 439 (citing *State v. Lee,* 494 N.W.2d 706, 707 (Iowa 1993); *State v. Thompson,* 570 N.W.2d 765, 769–70 (Iowa 1997)). Specifically, Instruction No. 15 required a finding that Sillick "act-

---

**12.** *State v. Lee* addressed a very similar definition of malice aforethought as that used in Sillick's trial. The court in *Lee* held that any ambiguity concerning the malice element was sufficiently dissipated when that instruction was read in conjunction with the marshaling instruction. *State v. Lee,* 494 N.W.2d 706, 707 (Iowa 1993). The marshaling instruction in *Lee,* like Instruction No. 15 in Sillick's trial, required that the defendant be found to have "acted" with malice aforethought, which the court found to adequately convey that the defendant must have so acted with respect to shooting the victim. *See Id.* The court in *Lee* further noted that the requisite relationship between malice aforethought and specific intent is more accurately characterized as a "causal" rather than a "temporal" relationship. *Id.*

**13.** The Iowa Court of Appeals, on review of the Linn County District Court's post conviction review decision, specifically noted that Iowa courts "evaluate instructions as a whole, not piecemeal or in artificial isolation." *Sillick v. State of Iowa,* No. 01–0284, 2002 WL 31015257, 2002 Iowa App. LEXIS 989 (Iowa App.2002) (citing *State v. Chambers,* 529 N.W.2d 617, 620 (Iowa Ct.App.1994)).

ed" with premeditation, wilfulness, deliberateness, and malice aforethought, and consequently the jury was adequately advised that Sillick must have possessed those mental states both before and at the time of the criminal act. *See Id.* With respect to Sillick's contention that the instructions should have included a finding that the State had disproved Sillick's defenses, the court finds that the State was not required to disprove Sillick's defenses of diminished responsibility and intoxication as an added element of their case against him, and Sillick was thus not entitled to an instruction to that effect. *State v. Rinehart,* 283 N.W.2d 319, 320 (Iowa 1979); *State v. Templeton,* 258 N.W.2d 380, 383 (Iowa 1977).[14] Significantly, Instruction No. 20 notified the jury that "the burden is on the State to prove that [Sillick] was able to, and did, form the specific intent required." Instruction No. 15 likewise advised the jury that the State carried the burden of proving that Sillick had the specific intent to kill. Therefore, the instructions read as a whole make clear that the State bears the burden of proof on the essential element of intent. *Holmes, supra,* at 826.

In sum, the court finds that the instructions in Sillick's trial adequately conveyed the requisite elements for first degree murder and further accurately represented the burden of proof concerning the defenses presented. Accordingly, the court holds that Sillick's trial and appellate counsel were not ineffective for failing to object to, or raise on appeal, the first degree murder instructions. Because

there was no deficient performance on the part of Sillick's trial and appellate counsel in regard to the first degree murder instructions, the court finds that Sillick has failed to demonstrate prejudice. The court thus finds that the lower courts did not unreasonably apply the *Strickland* ineffectiveness standard in determining Sillick's ineffective assistance of counsel claim concerning the first degree murder instructions. *See Williams, supra,* at 364–65, 120 S.Ct. 1495; *Evans, supra,* at 872.

### 3. Cumulative Error

Finally, Sillick claims that he was denied effective assistance of counsel based on various cumulative errors made by trial counsel and appellate counsel. Sillick's claim of cumulative error is that several failures of his trial and appellate counsel amounted to cumulative error which culminated in his receiving ineffective assistance of counsel. Specifically, Sillick contends that he was denied effective assistance of counsel as a result of his trial and appellate counsel's failure to object to the Trial Information, failure to preserve error on the prosecutor's closing remarks, failure to object to the omission of a verdict form which was required by Iowa law in diminished capacity defense cases, and failure to request a reversal of the trial court's motion in limine ruling concerning a state expert witness. In response, the respondent argues that Sillick's cumulative error claim is procedurally defaulted, fails to state a claim for federal habeas relief, and is without merit.[15]

---

14. The court notes that, in Iowa, an instruction on intoxication does not need to state that the State must disprove the defense. *See State v. Holmes,* 276 N.W.2d 823, 826 (Iowa 1979). The court further notes that pursuant to Iowa law, a defense of diminished responsibility does not require the State to disprove the defense as an additional element of its case. *Rinehart, supra,* at 320.

15. Although the court rejects Sillick's application for writ of habeas corpus based upon the merits of his ineffective assistance of counsel claims, the court finds persuasive the respondent's argument that Sillick's cumulative error claims are also procedurally defaulted as he has not presented such claims to the state courts for exhaustion and has failed to demonstrate cause for the procedural default and prejudice attributable thereto. *See McDonald, supra,* at 598.

The Iowa Court of Appeals, on review of the district court's postconviction relief decision, analyzed each of Sillick's cumulative claims on the merits. *See Sillick v. State,* No. 01–0284, 2002 WL 31015257, 2002 Iowa App. LEXIS 989 (Iowa App.2002). The Iowa Court of Appeals found Sillick's claim concerning the allegedly deficient trial Information to be meritless. *Id.* The Iowa Court of Appeals held that the Trial Information complied with the applicable state rules of criminal procedure, that it named the offense and identified by number the statutory provisions the defendant was charged with having violated, and that it was therefore "sufficient to give the court and [Sillick] notice of the offense charged." *Id.* The Iowa Court of Appeals further noted that in reviewing a claim that a Trial Information is constitutionally deficient, Iowa courts consider not only the Trial Information, but also the minutes of evidence, to determine whether the allegations contained in the Trial Information adequately apprise a defendant of the offense charged. *Id.* (citing *State v. Grice,* 515 N.W.2d 20, 23 (Iowa 1994)).

▮ The court finds that Sillick has failed to establish that there existed a jurisdictional defect in the Trial Information which implicated his due process right of notice. The Trial Information in Sillick's case adequately informed him, his attorneys, and the trial court as to what statutory provisions he was accused of having violated. Therefore, Sillick's trial and appellate counsel breached no duty or caused any prejudice to Sillick in failing to object to the Trial Information. *See English, supra,* at 613.

The Iowa Court of Appeals also found that Sillick's claim of ineffective assistance based upon his counsel's failure to object to the prosecutor's closing remarks was meritless. *See Sillick v. State,* 2002 WL 31015257. The closing remarks at issue were as follows:

Now Instruction No. 20 is the one that deals with this subject. It's a defense which a lot of people don't like. If they had their way, it wouldn't exist. People don't like other people getting away with activity, avoiding responsibility because of drug usage; but that is the law as expressed in Instruction 20, and you must follow your oath as a juror to apply that law, but don't become an advocate for the Defendant. Don't overdo it. Do what it says.

Sillick's trial counsel testified that he interpreted these remarks to mean that, "although people might not like the defense of diminished capacity or intoxication, the jury would be well within its right to accept such a defense and return a verdict of murder in the second degree." *Id.* Sillick's trial counsel went on to explain that he understood the remarks to be "almost ... an invitation ... to come down ... to murder two." *Id.* The Iowa Court of Appeals evaluated trial counsel's interpretation, determined that it was a "reasonable" interpretation, and accordingly found that trial counsel's decision to not object was a "reasonable trial strategy." *Id.*

▮ The court finds that Sillick's trial counsel's decision to refrain from objecting to the prosecutor's closing remarks did not fall below an objective standard of reasonable representation. *See English, supra,* at 613. The United States Supreme Court has provided guidance for determining whether a closing argument in the guilt phase of a trial has violated a defendant's right of due process. *See Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). An improper closing argument in the guilt phase of a trial reaches the level of constitutional error if counsel's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Copeland,* 232 F.3d at 974 (citing *Donnelly*

v. *DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). In Sillick's trial, the offending portion of the prosecutor's closing remark cannot be said to have "so infected the trial" that his first degree murder conviction was a denial of due process. *Id.* Significantly, the offensive remark was immediately followed by a caution to the jury that they must follow the law and "do what it says." The court finds that Sillick's trial counsel was not "ineffective" for refraining from objecting to the State's closing remarks, and Sillick's appellate counsel was likewise not "ineffective" in failing to raise this issue on direct appeal.

■ The Iowa Court of Appeals also reviewed Sillick's claim that trial and appellate counsel were ineffective for failing to object to, and failing to raise on appeal, the omission of a verdict form which is required by Iowa law in cases where diminished responsibility is asserted as a defense. *See Sillick v. State,* 2002 WL 31015257. The Iowa Court of Appeals noted that the Iowa Rules of Criminal Procedure do require that "if the defense is diminished responsibility the jury must be instructed that if it so acquits the defendant on that ground it shall so state in its verdict." *Id.* (citing Iowa R.Crim. P. 2.22(8)(a)). The Iowa Court of Appeals went on to hold that Sillick's trial counsel had thus breached an essential duty, but that there was no "resulting prejudice" because the "verdict form in question and the related instruction would be of significance only if there was a reasonable possibility of complete acquittal." *Id.* The Iowa Court of Appeals reasoned that in the instant case there was "essentially no chance" nor was it the goal of defense counsel that Sillick be acquitted. *Id.* In addition, the Iowa Court of Appeals held that regardless of the low probability of an acquittal, "the jury instructions and verdict forms" submitted in Sillick's trial were "fully adequate to allow the jury to find

[Sillick] not guilty of first-degree murder but guilty of a lesser included offense, or to find [Sillick] not guilty and acquit him, whether because of diminished responsibility or because the State otherwise did not prove its case." *Id.*

The court agrees with the Iowa Court of Appeals that, pursuant to Iowa Rule of Criminal Procedure 2.22(8)(a), Sillick's trial counsel breached a duty by failing to object to the omission of the requisite verdict form. *See Id.* The court further agrees that Sillick has failed to demonstrate that counsel's errors were "so prejudicial that the adversarial balance between defense and prosecution [was] upset," nor has he shown that trial counsel's errors rendered the verdict "suspect." *Lockhart v. Fretwell, supra. English v. United States,* 998 F.2d 609, 613 (8th Cir.1993), *cert denied,* 510 U.S. 1001, 114 S.Ct. 573, 126 L.Ed.2d 472 (1993); *Cf. Strickland v. Washington,* 466 U.S. 668, 688–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As the Iowa Court of Appeals pointed out, the purpose of the verdict form requirement appears to be for "the sole purpose of commitment for evaluation and subsequent proceedings" in the event of an acquittal based upon diminished responsibility. *Sillick v. State,* 2002 WL 31015257. The facts in Sillick's case do not implicate such a purpose. Further, the jury instructions and verdict form in Sillick's case adequately enabled the jury to find him guilty of a lesser included offense or to acquit him. Accordingly, Sillick has failed to establish that his trial counsel was ineffective for failing to object to the omission, or that his appellate counsel was ineffective for failing to raise the issue on direct appeal. *See Lockhart, supra,* at 367, 113 S.Ct. 838.

■ Finally, the Iowa Court of Appeals, on review of the Linn County District Court's postconviction relief decision, examined Sillick's claim that his trial and

appellate counsel were ineffective for their "failure to attempt to reverse the trial court's pre-trial ruling sustaining the State's Motion in Limine" concerning testimony from a State's expert.[16] *See Sillick v. State*, 2002 WL 31015257. The Iowa Court of Appeals held that Sillick's trial counsel acted reasonably in deciding to refrain from asking the trial court to revisit the evidentiary issue. *Id.* Of significance, the Iowa Court of Appeals noted that the Iowa Supreme Court, on direct appeal of Sillick's case, found "no abuse of discretion in the trial court's challenged ruling as any relevancy was outweighed by possible prejudice to the State, and that any ineffectiveness claim derived from the same contention was moot." *Id.* (citing *State v. Sillick*, No. 95–578 (Iowa 1997)).

The court finds that Sillick has failed to demonstrate that his trial counsel's decision to refrain from revisiting the motion in limine ruling was objectively unreasonable. *See English, supra*, at 613. First, Sillick appears to focus solely on what trial counsel could have done, rather than appropriately analyzing whether the choice trial counsel made regarding whether to further challenge the motion in limine ruling was objectively reasonable. Second, the court's determination of counsel's reasonableness is and must be deferential to the state courts' holdings concerning the challenged evidentiary ruling. "In federal habeas corpus proceedings state evidentiary issues are reviewable only when 'the asserted error infringed a specific constitu-

tional protection or was so prejudicial as to deny due process.'" *Griffin v. Delo*, 33 F.3d 895, 904 (8th Cir.1994) (quoting *Wallace v. Lockhart*, 701 F.2d 719, 724 (8th Cir.1983) *cert denied*, 464 U.S. 934, 104 S.Ct. 340, 78 L.Ed.2d 308 (1983)). Due process is denied when the evidentiary error is "gross, conspicuously prejudicial or of such import that the trial was fatally infected." *Griffin*, 33 F.3d at 904 (citing *Rhodes v. Foster*, 682 F.2d 711, 714 (8th Cir.1982)). The Eighth Circuit has ruled that this due process standard mandates a greater showing of prejudice than is needed to support a finding of plain error on direct appeal. *Id.* (citing *Redding v. Minnesota*, 881 F.2d 575, 579 (8th Cir. 1989)). Sillick has not established that the evidentiary ruling constituted a denial of due process. *See Id.* (citing *Rhodes v. Foster*, 682 F.2d at 714). It follows that Sillick's trial counsel did not breach an essential duty in failing to request reconsideration of the trial court's motion in limine ruling. *See English, supra*, at 613.

Applying the *Williams* standard to the lower courts' dismissal of each of Sillick's claims of cumulative error, the court finds that the lower courts' application of the *Strickland* ineffectiveness standard was not unreasonable as to any of Sillick's cumulative error claims. *Williams, supra*, at 364–65, 120 S.Ct. 1495.

For the reasons discussed above, **IT IS RECOMMENDED,** unless any party files objections[17] to the Report and Recommen-

---

**16.** During Sillick's trial, the State called Psychiatrist Curtis Frederickson as an expert witness. In granting the State's motion in limine as to portions of Dr. Frederickson's report, the trial court struck from evidence at trial the statement, "I would note that most inmates who commit crimes like this are doing time for second-degree murder." Sillick argues that trial counsel's "tactical choice not to seek the admission of Dr. Frederickson's comparative analysis of other patients to [Sillick] was unreasonable" because trial counsel

"had nothing to lose by asking the trial court" to reconsider admitting such testimony.

**17.** Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.

dation within ten (10) days of the date of the report and recommendation, that the petitioner's application for a writ of habeas corpus be denied.

June 18, 2004.